# LYNHAM *v.* HUFTY.

EQUITY; DECREES AND ORDERS; HUSBAND AND WIFE; DIVORCE; ASSIGNMENTS.

1. A judgment, though interlocutory with relation to the final disposition of the suit, may be treated as final, and as possessing all of the elements of a final judgment, if it settles the dispute of the parties as to the particular matters in issue in the interlocutory proceedings, and leaves nothing further for consideration.

2. An order in a divorce suit, made before a final decree, awarding the wife as against the husband a specific sum of money for alimony *pendente lite* in arrears, is a final, and not an interlocutory order, even though the final decree dismisses the wife's bill and grants the husband an absolute divorce on his cross bill; and the husband

is liable on such order after the passage of the final decree. (Following *Lesh* v. *Lesh,* 21 App. D. C. 475; distinguishing *Walter* v. *Walter,* 15 App. D. C. 333, and construing secs. 975 and 1104 D. C. Code, 31 Stat. at L. 1346, 1362, chap. 854.) Chief Justice SHEPARD dissenting.

3. Where in a divorce suit, before final decree, an order is made awarding the wife as against the husband a specific sum on account of the fee of the examiner in chancery, after the making of which order the examiner files the testimony, and thereafter a final decree is passed dismissing the wife's bill, and granting the husband an absolute divorce on his cross bill, and awarding the husband costs of suit as against the co-respondent named in the cross bill, the order is a final adjudication of the husband's liability for the examiner's fee, with the right on the part of the husband under the final decree to recover over against the co-respondent. (Chief Justice SHEPARD dissenting.)

4. An order in a divorce suit, awarding the wife as against the husband a specific sum for alimony *pendente lite* in arrears, is assignable by her, although an order directing the payment of such alimony in the future would not be. (Citing D. C. Code, sec. 431, 31 Stat. at L. 1256, chap. 854.)

No. 2441. Submitted November 5, 1915. Decided December 6, 1915. Motion for reargument granted December 30, 1915. Reargued January 5, 1916. Decided on reargument April 3, 1916.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia enjoining the enforcement of a decree for the payment of money, and canceling the same of record. *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a decree of the supreme court of the District of Columbia restraining the enforcement of a judgment, and canceling the same of record.

Appellee, Hufty, was sued for divorce by his wife, Mary Page Hufty, charging him with adultery, to which he answered by way of cross bill making a similar charge against her, naming one Wilson as co-respondent. This suit resulted in a final decree in favor of Hufty. In the course of the proceedings the

court made an order requiring Hufty to pay his wife alimony *pendente lite*. The cause was referred to an examiner in chancery for the taking of testimony. A large volume of evidence was taken, which the examiner, under rule of court, refused to file until the costs for the taking of the same had been paid.

It being called to the attention of the court, through a petition of the wife, that Hufty had failed to pay the examiner's fees, thereby preventing the case from going to trial, and also that he was in default in the payment of alimony, a citation was issued requiring him to "show cause on or before March 21, 1912, at 10 o'clock A. M., why he should not be required to pay forthwith J. Arthur Lynham, examiner, for the testimony taken in this cause and the copies thereof furnished plaintiff and defendant, and likewise the arrears of alimony due the plaintiff, and in default thereof why he shall not be attached and imprisoned, and why he shall not be enjoined from making any disposition of his property to avoid the collection of the said fees and alimony, and why his property shall not be sequestrated and the income thereof applied to such objects."

Hufty answered, admitting that "there is due to J. Arthur Lynham, examiner in chancery, his fee for the taking of testimony on behalf of the plaintiff and defendant in this cause," and "that he was furnished with a copy of the testimony by the said examiner and for which he is liable." He then pleads good faith, in that he conveyed certain lots to "trustees so that the same might be sold and the proceeds derived therefrom to be applied to the payment of the examiner's fee and alimony." He also answered as follows: "This respondent has made constant and diligent efforts to make sale of said property, and in addition thereto has endeavored to find purchasers for any other property of which he is the owner, so that he might be able to procure funds with which to pay the examiner's fee as well as the arrears of alimony. That he is anxious to have the examiner's fee paid so that the said cause might be calendared for hearing and determination, and that at the time of the transfer of the said property to the trustees as aforesaid the examiner would feel that he was amply secured in the payment of his

fee to justify him in filing said testimony. This respondent further says that he is perfectly willing that any other property of which he is seized or possessed may be sold, and the proceeds of the sale shall be used in the payment of the examiner's fee and alimony, but that he does not feel that any of said property should be sacrificed for this purpose."

When this proceeding came on for hearing on Hufty's admitted default, he was not committed for contempt, the court expressly leaving the matter of contempt open should there be any further disobedience of its orders, and a decree was entered against him for the accrued alimony and for the examiner's fees admitted to be due. The portion of the decree with which we are here concerned reads as follows: "This cause coming on for consideration by the court upon the petition of the complainant filed herein March 15, 1912, and the answer thereto of the above-named defendant, Malcolm Hufty, filed herein April 12, 1912, and having been argued by counsel and considered by the court, it is, this 13th day of May, 1912, adjudged and ordered that there is now due and payable, as of March 15, 1912, by the said defendant Malcolm Hufty to the complainant Mary Page Hufty for and on account of examiner's fees, namely for J. Arthur Lynham, $1,086.50 and for J. W. Hulse, $300, and as arrears for allowance for alimony *pendente lite,* namely, $950, being in all the sum of $2,336.50, and that the complainant have execution therefor as at law."

Thereafter the examiner Lynham filed the testimony in the case, and on final hearing a decree was entered granting Hufty a divorce from his wife, the material portions of which are as follows: "And thereupon the court proceeding to decree upon the said original bill of the said Mary Page Hufty, and the said answers thereto and the testimony introduced in support thereof doth find that the averments of the said original bill are not sustained or proven, and doth on this 20th day of December, A. D. 1912, adjudge, order, and decree that the decree of divorce therein prayed for be and the same is hereby denied, refused and overruled, that the costs incurred by the aforesaid defendant Malcolmn Hufty be taxed as hereinafter provided. * * *

It is further adjudged, ordered, and decreed that the said co-respondent to the said cross bill, Theodore D. Wilson, shall and do pay all the costs of this suit to the said Malcolm Hufty, complainant therein, incurred in the prosecution and defense of the said original and cross bills, to be taxed by the clerk." On October 3, 1912, Hufty having failed to pay the amount awarded Mrs. Hufty by the decree of May 13, 1912, she assigned all her right, title, and interest in said decree to appellant Lynham. It is to restrain Lynham from enforcing this decree, and to remove the alleged cloud from the title to his property, that Hufty filed the bill in the present case.

*Mr. George E. Sullivan* and *Mr. Walter C. English* for the appellant.

*Mr. Edmund Burke* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is contended by counsel for appellant that the decree of May 13, 1912, is a final decree, while the contention is made by counsel for appellee that it is merely an interlocutory order, subject to the final decree in the case; that, as the final decree was in favor of the husband, and made no provision for alimony, it nullified the effect of the former decree, and that, in the final decree, the costs in the entire action were assessed against the co-respondent, Wilson, thereby relieving Hufty from the obligation as to costs imposed upon him by the former decree.

Strictly speaking, any order or decree made between the parties in a pending suit before final judgment is interlocutory. But, through interlocutory in nature, it may be final as to matters disposed of to the extent that it is enforceable, independent of the final determination of the general matters in controversy. In other words, a judgment, though interlocutory with relation to the final disposition of a suit, may be treated as final and as possessing all the elements of a final judgment if

it settles the dispute of the parties as to the particular matters in issue in the interlocutory proceeding and leaves nothing further for consideration. A purely interlocutory order is distinguishable in that it leaves something open to await the further or final determination of the general subject in litigation. For example, an order requiring the payment of money into court to await the final judgment of the court is interlocutory. "The reference of a case to a master, to take an account upon evidence, and from the examination of the parties, and to make, or not to make, allowances affecting the rights of the parties, and to report his results to the court, is not a final decree." *Beebe* v. *Russell,* 19 How. 283, 15 L. ed. 668. But a decree in a suit for the foreclosure of a railroad fixing the compensation to be paid the trustees under the mortgage is a final decree. *Williams* v. *Morgan,* 111 U. S. 684, 28 L. ed. 559, 4 Sup. Ct. Rep. 638. Also an order for an allowance of costs and expenses to a complainant suing on behalf of a trust fund. *Internal Improv. Fund* v. *Greenough,* 105 U. S. 527, 26 L. ed. 1157. And an order made in favor of a receiver, though "it was a side issue in the cause, in which the complainants on the one side, and the receiver on the other, were real and interested parties," is final. *Hovey* v. *McDonald,* 109 U. S. 150, 27 L. ed. 888, 3 Sup. Ct. Rep. 136. An order for the future payment of alimony is of such finality as to be enforceable and entitled to full faith and credit in the courts of a sister state. *Sistare* v. *Sistare,* 218 U. S. 1, 54 L. ed. 905, 28 L.R.A.(N.S.) 1068, 30 Sup. Ct. Rep. 682, 20 Ann. Cas. 1061. Also a decree for a sale under a mortgage is final. *Ray* v. *Law,* 3 Cranch, 179, 2 L. ed. 404. In the *Beebe Case,* it was held that a "decree is final when ministerial duties are only to be done to ascertain a sum due." In this classification a decree merely for the allowance of alimony is final. In *Lesh* v. *Lesh,* 21 App. D. C. 475, this court, holding an order for the payment of alimony *pendente lite* final, said: "A order for the payment of alimony *pendente lite,* although merely an incident in all these proceedings, is in effect a final order. It is capable of being enforced by immediate execution, and although it is revocable and may

be rescinded by the court, and, although it may wholly fall by a
final decision on the merits of the cause adverse to the petitioner,
yet as long as it remains in effect and to the extent to which it
has been enforced by payment or execution, it is an absolute
finality."

Section 975 of the District Code [31 Stat. at L. 1346, chap.
854] provides in regard to alimony *pendente lite* that "during
the pendency of a suit for divorce, or a suit by the husband
to declare the marriage null and void, where the nullity is
denied by the wife, the court shall have power to require the
husband to pay alimony to the wife for the maintenance of
herself and their minor children committed to her care, and
suit money, including counsel fees, to enable her to con-
duct her case, whether she be plaintiff or defendant, and
to enforce obedience to any order in regard thereto by at-
tachment and imprisonment for disobedience. The court
may also enjoin any disposition of the husband's property
to avoid the collection of said allowances, and may, in case of
the husband's failure or refusal to pay such alimony and suit
money, sequestrate his property and apply the income thereof
to such objects." The statute, it will be observed, furnishes an
adequate and drastic remedy for the enforcement of a decree
for the payment of temporary alimony. At any time, for fail-
ure to pay, the delinquent may be cited into court to abide its
judgment. It is not essential that this be delayed to await the
final determination of the case. In case of default it may be
done at any time while the cause is pending. This situation
arose in the present case. Hufty was in default in the pay-
ment of alimony. He was cited to appear. When he appeared
he was confronted with the alternative of paying the accrued
alimony or of going to jail. The decree awarding judgment
with execution was entered and accepted by the wife in lieu
of cash payment. It will hardly be contended that, had Hufty
paid, the final decree in the case would, or could, have afforded
him any relief. To the same extent was the judgment a con-
clusion of the whole question of the prior accrued alimony.
The decree contains no limitations to impair its finality. It
was for an accrued debt, for which a speedy remedy was pro-

vided by statute. The remedy was available to the same extent and with the same result as if it had been deferred to the final determination of the case.

The proceedings culminating in the decree of May 13, 1912, constituted an adjudication enforcing payment under the decree for the allowance of temporary alimony. It was in aid of that decree, and whatever infirmities the former decree may have possessed by reason of its interlocutory character were swept away by the latter decree awarding judgment with the right of execution. The enforcement of the payment of the arrears of alimony was justiciable in the court where the proceedings were brought. Having jurisdiction of the case, it had power to enter a suitable decree containing all the elements of finality inhering in judgments of courts of general jurisdiction. The issue as to alimony was in no way dependent upon the final decree in the case. Hufty was liable for the support of his wife and for cost money, so long as the decree for alimony remained unmodified, up until the moment the final decree was entered. The decree of May 13, 1912, was therefore only an adjudication of an accrued indebtedness growing out of the former decree.

If, as held in the *Lesh Case,*—and we are not disposed to modify the holding,—a decree for the payment of temporary alimony is final, upon which execution may issue, how much stronger the reason for holding final a judgment resulting from an adjudication of the rights of the parties under such a decree. In aid of the decree the statute anticipates just what here occurred, and furnishes the remedy here invoked. The mere fact that a judgment was accepted, instead of a cash payment or imprisonment, is of no moment. The plaintiff was satisfied, and it would seem that Hufty is in poor position to complain of the alternative adopted.

The case of *Walter* v. *Walter,* 15 App. D. C. 333, is cited by Hufty as conclusive of this case. In that case, at the time of the entry of the final decree for divorce in favor of the husband, there was due two months of accrued alimony. No claim was made for this, or reference to it in the final decree. Two

years later, the wife undertook to cite her husband into court to recover the unpaid alimony. The court held that, no claim having been made before or at the time of the entry of the final decree, it was deemed to have been embraced in the final determination of the cause. The case has little or no bearing upon the present case, in that here claim was made before final decree and judgment for the accrued alimony was awarded.

But the *Walter Case* was decided in 1899. With the adoption of the Code final effect was given to any unconditional decree for the payment of money. Sec. 1104 of the District Code [31 Stat. at L. 1362, chap. 854], under the general head of "Execution," provides: "The aforegoing provisions shall be applicable to an unconditional decree in equity for the payment of money. Such decree may be revived by scire facias, and the same writs of execution may be issued thereon within the same time and have the same effect as liens, and shall be executed and returned in the same manner as if issued upon a common-law judgment."

Though not referred to in the *Lesh Case,* which was decided since the adoption of the Code, the foregoing section may well have been in the mind of the court in impressing a degree of finality upon a mere decree for the future payment of temporary alimony. Had the decree of May 13, 1912, not contained that distinguishing feature of finality in judgments,—the right of execution,—it would have inhered by force of the statute.

Less difficulty is encountered in disposing of that portion of the decree involving the examiner's fees. Hufty, by his failure to pay these costs, was impeding the progress of the divorce case. It would be a sad commentary on our system of jurisprudence if a court were powerless to prevent a litigant from impeding the progress of litigation through his own default. "In equity, the award of costs depends largely upon the facts and circumstances of each particular case, and rests entirely within the discretion of the court, to be exercised upon principle and with reference to the general rules of practice." 7 R. C. L. 783.

In a divorce proceeding the husband is primarily liable for

the costs. The citation in this case required Hufty to show cause why the examiner's fees should not be paid. He, by answer, admitted his liability, and this decree, in lieu of cash payment, was entered against him. It involved only accrued and fixed costs for which Hufty was indebted. It will not do to say that the examiner took his chances in failing to secure cash payment before filing the transcript of the evidence. Hufty and the examiner were both officers of the court. There is a comity and a confidential relation existing between attorneys and the clerical administrative officers of the court, which begets mutual reciprocity. Hufty, after pleading the mercy of the court and invoking the sympathy of the examiner to the extent that he accepted the decree in lieu of cash, is not here in that spotless condition which equity requires.

It was clearly within the power of the court to require the satisfaction of these costs by Hufty, and the decree is a final adjudication of his liability. "The finality of a decree is not determined by the stage of the suit at the time it is rendered, but upon whether it concludes a party in imposing on him a liability or in depriving him of a right." *Alexander* v. *Bates,* 127 Ala. 328, 28 So. 415. And in *Garrison* v. *Singleton,* 5 Dana, 161, in reference to a separate judgment for costs, the court said: "Such a judgment is not only final, but is separate, distinct, and independent."

But no relief can be found in the final decree, even if, as contended, the court had power to modify the former decree. In the final decree, the court ,by language that cannot be misunderstood, "adjudged, ordered, and decreed that the said co-respondent to the said cross bill, Theodore D. Wilson, shall and do pay all the costs of this suit to the said Malcolm Hufty complainant therein, incurred in the prosecution and defense of the said original and cross bills." Hufty was here held for all costs, and given a judgment over against the co-respondent Wilson. This in no way modified the former decree, but assumes its finality and confirms it. The contention here made is anomalous, in that, if sustained, Hufty would be relieved of liability to Lynham,

but still have an enforceable judgment against Wilson for the cost money which he never paid.

The decree of May 13, 1912, being an enforceable judgment by execution, and not impaired by the final decree of December 20, 1912, Lynham, by the assignment, succeeded to all the rights of Mrs. Hufty.  D. C. Code, sec. 431 [31 Stat. at L. 1256, chap. 854].  Indeed, that portion of the decree involving the examiner's fee equitably belonged to Lynham.  As to that Mrs. Hufty only conveyed what in equity she held as trustee for Lynham.  It is true that a decree ordering the payment of a periodical allowance of alimony in the future is not assignable, for the elementary reason that it is made in the discretion of the court, and springs from the duty imposed upon the husband of not only supporting his wife, but of furnishing her with the means of conducting her litigation.  This duty devolves upon the husband up until the moment the decree of divorce is entered, even though the husband may prevail.  A decree for the future payment of alimony, either periodically or by a single payment, is not a judgment in the nature of a penalty or for damages, or even for a debt in a strict legal sense, but rather an order made within the sound discretion of the court, and until complied with is subject to modification by the court, either by increasing or diminishing the amount, or even by vacating the order.  It follows, therefore, that it would be against public policy to permit the wife to assign future awards for her support, since it would be equivalent to compelling the husband to contribute to the support of one without claim upon his bounty.  The decree here, however, is in the nature of an adjudicated judgment for accrued alimony, and at the date of the assignment the term of court at which it was entered having expired, it was beyond the power of the court in its discretion to modify or vacate it.

The decree is reversed, with costs, and the cause is remanded with directions to dismiss the bill.

*Reversed and remanded.*

Mr. Chief Justice Shepard dissenting.