### KEPHART v. KEPHART.
No. 10446.

United States Court of Appeals
District of Columbia Circuit.

Argued April 30, 1951.

Decided Oct. 11, 1951.

As Amended Nov. 7, 1951.

Writ of Certiorari Denied March 3, 1952.
See 72 S.Ct. 557.

Fahy, Circuit Judge, concurred in part and dissented in part.

Washington, Circuit Judge, filed a separate opinion, in which Edgerton and Bazelon, Circuit Judges, concurred.

Jesse Lee Hall, Washington, D. C., for appellant.

N. Meyer Baker, Washington, D. C., with whom John F. Lillard, Washington, D. C., John F. Lillard, Jr., Hyattsville, and Joseph A. Barry, Washington, D. C., were on the brief, for appellee.

John H. Burnett, Washington, D. C., appointed by this Court as amicus curiae, urged reversal.

Jean M. Boardman, Washington, D. C., appointed by this Court as amicus curiae, urged reversal.

Before STEPHENS, Chief Judge, and EDGERTON, CLARK, WILBUR K. MILLER, PRETTYMAN, PROCTOR, BAZELON, FAHY and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge, with whom Chief Judge STEPHENS and Circuit Judges CLARK, PRETTYMAN and PROCTOR concur:

In this case the United States District Court for the District of Columbia denied a divorced wife's motion that her former husband be held in contempt for failing to pay alimony which the court had theretofore decreed to her; and refused to award her a "money judgment" against him for installments of alimony which had become due and were unpaid, despite the fact that the original decree under which the installments accrued had never been modified or set aside.

The wife's appeal from the District Court's action presents the following questions which are important in this jurisdiction:

1. May the trial court in its discretion refuse to punish for contempt one who disobeys its order to pay alimony; if so, was the discretion properly exercised, or abused, in this case?

2. Is a decree directing future payment of alimony in itself a "money judgment," either originally or with respect to each installment as it becomes due; or is there

no enforceable judgment for money in the wife's favor until, after the accrual of installments, an additional decree has been entered awarding judgment thereon, pursuant to her motion therefor accompanied by a showing of the amount which has become due and which has not been paid?

3. Having awarded alimony to be paid periodically, has the District Court the power to modify or remit installments thereof which have become due and payable?

Before discussing these questions, we shall relate the history of the case. Some fifteen years ago the District Court granted a divorce to Irma N. Kephart and ordered the husband to pay $75 per month for the support of the wife and two infant daughters. That allowance of alimony has never been modified or revoked.

Four days after the divorce was granted in 1936, the appellee-husband remarried and established a new home in Maryland. In 1937 he was held in contempt here for failing to pay alimony but purged himself by paying the amount then due; subsequently he paid occasional small amounts until March 22, 1940, after which date he paid nothing although, as we have seen, the award of alimony had not been modified or set aside.

After vainly trying for several years to get the assistance of counsel, Mrs. Kephart finally found an attorney who instituted suit for her in the Circuit Court for Prince Georges County, Maryland, the county of the appellee's residence, to recover installments of alimony which had accrued, under the decree of the District Court, after March 22, 1940. Kephart demurred to the complaint on the theory that the 1936 divorce decree of the District Court which awarded alimony was lacking in finality and therefore could not be enforced in the Maryland court under the full faith and credit clause. In support of the theory he cited our opinion in Franklin v. Franklin, 1948, 83 U.S.App.D.C. 385, 171 F.2d 12, where we held for the first time that the trial court has authority to set aside matured installments of alimony. Without a ruling on the demurrer, the case has "gone to the files" in Prince Georges County and has not been calendared by either party

In 1949 Mrs. Kephart entered in the original divorce action in this jurisdiction the motion which gave rise to this appeal. She asked for a contempt citation and for judgment for accumulated arrearages of alimony in the sum of $8,100.

The appellee responded to appellant's motion as though it were an order to show cause. He filed in opposition his own affidavit that he removed to Prince Georges County, Maryland, and there remarried; that he and his second wife have two sons; that in 1942, when the younger of the two children of his first marriage attained her majority, he believed his former wife no longer needed his financial support so he ceased making alimony payments to her. He swore that from such cessation until early in 1948 he heard nothing from appellant and that she made no demands upon him; but that in May, 1948, he was served with process in the suit in the Circuit Court of Prince Georges County for a money judgment based upon his failure to pay alimony. He averred under oath that he was currently earning approximately $5,000 per year and had "two pieces of investment property" on which he was making payments.

Thus the appellee-husband asserted laches as a defense, contending that the wife's delay in seeking to collect the arrearages, coupled with changes in his own circumstances, constituted in equity a bar to relief. He also asked in effect that the court reconsider the allowance of alimony with respect to installments already matured because the two daughters of the first marriage had long since come of age, and because he had had for some time the new burden of supporting two minor children by the second marriage.

It should be remembered that in denying appellant's motion, the District Court (a) declined to punish or even to cite appellee for contempt of court, and (b) refused to award to the appellant a "money judgment" for installments of alimony amounting to $8,100 which had become due under the original decree and were admittedly unpaid.

## I

We shall first consider whether the District Court has the discretion to refuse to cite or punish for contempt one who is delinquent in alimony payments; and, if so, whether the court was correct in its refusal here, under the defenses asserted by Kephart and in the circumstances shown.

Under subsections 410 and 411 of Title 16 of the District of Columbia Code (1940), when a divorce is granted to the wife, the court has authority to decree permanent alimony and to enforce obedience to its order in regard thereto by "imprisonment for disobedience." This authority to punish for contempt is not required by the statute to be invariably exercised. When a proper defensive showing is made by a delinquent defendant, such as unavoidable casualty, the court may refuse to punish him. But such refusal does not release the delinquent from civil liability to pay the amounts which have become due. Caffrey v. Caffrey, 1925, 55 App.D.C. 285, 4 F.2d 952.

Did the District Court act within its discretion in refusing to punish Kephart for contempt? Not under his plea of laches, for two reasons which follow:

1. A wife's delay in seeking to enforce payment of alimony does not destroy or affect the husband's obligation to obey the court's order. That obligation does not depend upon the payee's diligence in trying to collect. Contempt is shown by an inexcusable failure to pay what the court ordered; it is not limited to a failure to pay sums which the wife promptly demands.

2. The delay here did not amount to laches, as it was sufficiently explained and excused by the wife's illness, poverty and difficulty in obtaining counsel, coupled with the husband's non-residence.

Was the court's refusal to hold Kephart in contempt jusified by the conditions and circumstances shown by his defensive affidavit? We think not. He made no showing such as that in the Caffrey case. He relied upon the fact that his first set of children had become of age, and the fact that he had acquired a second set which he must support. Neither reliance was sufficient to save him from contempt.

As to the first, we have held that an allowance to a wife, under § 16–411 of the District Code, of "permanent alimony sufficient for her support and that of any minor children whom the court may assign to her care," is to be treated as alimony payable to the wife and is not contingent on the minority of the children. Lockwood v. Lockwood, 1947, 82 U.S.App. D.C. 105, 160 F.2d 923; Miller v. Miller, 1941, 74 App.D.C. 216, 122 F.2d 209. As to the second reliance, Kephart erred in thinking his voluntary assumption of new obligations by marrying a second time excused him from the primary obligation imposed by the court's award of alimony. Kelly v. Kelly, 1943, 78 U.S.App.D.C. 97, 137 F.2d 254.

Kephart could have applied to the court for a modification or remission of the award of alimony, due to changed conditions or circumstances, but until such an application had been made and granted, he had to obey the court's order. He could not take the law in his own hands, decide for himself that he need no longer obey, and then advance his own decision as justification for his disobedience. The District Court erred in refusing to exercise its discretion to punish him for contempt upon the showing he made.

We think, however, that upon remand Kephart should be cited for contempt and a hearing should be had as to the sufficiency of any defense which he may present. He may show grounds other than those presented in his affidavit heretofore filed which would justify the court in exercising its discretion to refrain from punishing him. We hold no more than that the defensive affidavit which Kephart filed was not sufficient to justify the court in refusing to penalize him for his disobedience.

We think it proper to add that the procedure in the District Court on appellant's motion was incorrect. As we have said, Kephart treated the motion that he be held in contempt as though it were a citation for contempt and filed his affidavit in defense. The District Court also treated the motion as though it were a citation and,

after considering the defensive affidavit, denied the motion. This was improper. If, when the motion to hold the appellee in contempt was filed, it was supported by the appellant's affidavit showing arrearages in the payment of alimony, then, after notice of the motion had been given to the appellee, a hearing should have been had, either in open court or on affidavits and counter-affidavits, and the court should have determined whether there was delinquency and, if so, whether the appellee had shown an excuse for non-performance sufficient to cause the court in the exercise of a sound discretion to refrain from punishing him. This procedure was not followed in the present case but was short-circuited. That is to say, both Kephart and the court seem to have considered the motion as tantamount to a citation, which it was not; and the court's order denying the motion amounted to a refusal even to cite Kephart. In the circumstances, this was improper.

## II

We next consider whether the District Court was correct in denying Mrs. Kephart's motion for a "money judgment" covering the arrearages in alimony. This brings us to the second of the legal questions stated in the beginning of this opinion: is a decree directing future payment of alimony in itself a judgment for money, or must it be supplemented by a new judgment entered for installments as they mature?

For reasons which will appear later, we hold that an award of alimony is a judgment for money, on which execution may issue. It is perhaps convenient, and certainly not improper, for the court to enter a new judgment establishing of record the accrued installments which are unpaid, when the wife draws the facts to the court's attention. But that procedure is not essential. Installments which have become due are easily calculated from the terms of the original decree and a look at the calendar. The wife's application for a writ of execution accompanied by her affidavit as to non-payment should move the issuance of the writ; if an issue is

raised concerning the amount due, the court can determine it.

We are told that it has long been the custom here to proceed as Mrs. Kephart did in asking for a "money judgment." As we have seen, it is not improper, although not essential. Even though Mrs. Kephart already had a judgment for $8,100, upon which she was entitled to execution, the court's denial of her motion indicates either that the money had been paid, or that the court asserted and exercised the authority to remit the accrued installments. There is no pretense of payment, so the court's action was purported remission. It was effective as such, because it is certain that the denial of her motion made it impossible for her to obtain a writ of execution.

## III

So, the last of the three legal questions initially stated must now be answered. Having awarded alimony to be paid periodically, has the District Court the power to modify or remit installments thereof which have become due and payable? If that power exists, it must be found in this language of § 16–413 of the D.C.Code: "After a decree of divorce in any case granting alimony and providing for the care and custody of children, the case shall still be considered open for any future orders in those respects."

From 1916 until 1948 this court consistently and unqualifiedly held that the District Court cannot modify or vacate installments of alimony which have become due. We shall quote extensively from our decisions during that period of more than thirty years so as to make apparent the reasoning upon which the uniform holding of those cases was based.

In Lynham v. Hufty, 1916, 44 App.D.C. 589, 599, we said, " * * * The decree * * * is in the nature of an adjudicated judgment for accrued alimony * * * [and] was beyond the power of the court in its discretion to modify or vacate it."

Caffrey v. Caffrey, 1925, 55 App.D.C. 285, 4 F.2d 952, was a case in which the trial court remitted certain alimony that had accrued under a prior decree. On appeal

this court noted that what is now numbered § 16–411 of the D.C.Code expressly confers authority upon the trial court to decree a wife permanent alimony for her support and that of any minor children, upon the granting of a divorce to her; and that the Code section which is now numbered § 16–413 provides that, after a decree of divorce and an award of alimony, "the case shall still be considered open for any future orders in those respects." The Caffrey opinion then said, "The question, therefore, is whether this reservation is prospective or retroactive." It answered the question by holding that the reservation of jurisdiction in such cases is prospective only, and in doing so said in 44 App.D.C. at pages 285 and 286, 4 F.2d at page 952:

"We think this question is determined by our decision in Phillips v. Kepler, 47 App.D.C. 384, 387. In that case a divorce had been granted a wife by a Nebraska court of competent jurisdiction, the decree to be in force only 'until the further order' of the court. In this court it was contended that the decree as to past installments was not final, but we said: 'The contention against the finality of the decree is based upon the provision which says that the requirement touching the alimony is to endure only "until the further order" of the court. But this does not disprove its finality as to installments past due. The decree may no doubt be altered by the court as to future payments, but there is no suggestion in it that, as to the installments which have matured, it is not final. In the Sistare case [Sistare v. Sistare, 218 U.S. 1], pages 13, 17 [30 S.Ct. 682, 54 L.Ed. 905], it was held that a decree like the one before us "operated to cause an indebtedness to arise in her (the wife's) favor as each installment of alimony fell due, and that a power to modify, if exerted, would only operate prospectively." If we may reason from the rule which obtains in statutory construction, a retroactive effect should not be given to the exercise of any power to recast a decree, unless the language defining the power leaves no choice. United States v. American Sugar Ref. Co., 202 U.S. 563, 26 S.Ct. 717, 50 L.Ed. 1149. No Nebraska statute nor decision has been brought to our attention which would authorize the court under the power reserved to so change the decree as to affect the installments past due. In view of this, and of the authorities cited, we hold that the modification of the decree, if made, would operate prospectively only and hence that the decree is final as to the installments of alimony in arrears.'

"The language of section 978 does not, in our view, clothe the court with the power exercised in this case. It does no more than authorize the court, as conditions change, to alter or modify its decree as to future payments, as was the effect of the ruling in Phillips v. Kepler."

The case of Biscayne Trust Co. v. American Security & Trust Co., 1927, 57 App.D.C. 251, 20 F.2d 267, is to the same effect. In that case this court said, at page 253 of 57 App.D.C., at page 269 of 20 F.2d: "* * * It is now too late for the court to set aside or reduce these sums [installments of alimony which had become due and were unpaid]. Phillips v. Kepler, 47 App.D.C. 384. In Caffrey v. Caffrey, 55 App.D.C. 285, 4 F.2d 952, it was held by this court that sections 976 and 978, D.C. Code, authorizing the court's allowance of permanent alimony, and providing that, after a decree of divorce in any case granting alimony, the case 'shall still be considered open for any further orders in those respects,' operates only prospectively, and not retroactively, and the court is without authority to remit overdue alimony on showing that default arose from personal injuries resulting in incapacity to work."

The same question arose in Lockwood v. Lockwood, 1947, 82 U.S.App.D.C. 105, 106, 160 F.2d 923, 924, in which we said: "* * * It is well settled in this jurisdiction that the trial court is without power to effect a revision or remittance of past due alimony."

In Cole v. Cole, 1947, 82 U.S.App.D.C. 155, 157–158, 161 F.2d 883, 885, this court said: "It is of course true that when the instalments of alimony ordered to be paid pendente lite became due and payable under the terms of the order, they became fixed obligations due to the wife which she may be able, by some appropriate proceedings, to collect. The Supreme Court said in Sis-

tare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 686, 54 L.Ed. 905, 28 L.R.A.,N.S., 1068, 20 Ann. Cas. 1061, that 'where * * * alimony * * * is made payable in future instalments, the right to such instalments becomes absolute and vested upon becoming due.' "

Thus it was thoroughly established in this jurisdiction that the trial court cannot modify or rescind past due alimony, until the case of Franklin v. Franklin, supra [83 U.S.App.D.C. 385, 171 F.2d 12], was decided in 1948. There the District Court declined to hold the defaulting husband in contempt and declined to give to the wife "a money judgment for accumulated arrears," on the grounds of laches and estoppel. This court affirmed, saying that suits for maintenance have been regarded in the District of Columbia as equitable rather than legal and that the trial court had exercised the discretion of a court of equity. The opinion said: "* * * Barber v. Barber, 21 How. 582, 16 L.Ed. 226, * * * and Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 * * * do not hold that a court which formerly issued an order for maintenance or the like must, regardless of equity and good conscience, enforce payment of accrued installments years later. Those cases and Phillips v. Kepler, 47 App. D.C. 384, hold only that other courts should enforce such payment if the court that issued the order would do so."

The opinion added that the Caffrey, Biscayne Trust Co. and Lockwood cases "rest on a misunderstanding of the earlier cases and should be overruled."

It is thus seen that in Franklin v. Franklin we departed from a long established interpretation of the pertinent Code provisions. The question is again presented by the case at bar, which was first heard by a panel of three judges in the usual manner. Because the matter is of such importance in this jurisdiction, and because some of us thought our decision in the Franklin case should be re-examined, the court *sua sponte* ordered a rehearing *en banc.*

Prior to the rehearing before the full court, we appointed John H. Burnett, Esq., and Jean M. Boardman, Esq., as *amici curiae* and requested them to discuss these questions: "(a) did the trial court properly

refuse to hold the husband in contempt and (b) did it have authority to remit the unpaid installments which had accrued to the wife under the divorce decree which stands without modification?" We also requested the *amici curiae* "to present briefs fully discussing the question of the merit of the decision in Franklin v. Franklin."

Pursuant to our request, Messrs. Burnett and Boardman, working separately, filed exhaustive briefs and participated in the extensive oral argument of this cause. Both reached the conclusion and argued to us that the District Court has no authority to remit unpaid installments of alimony which have matured under a divorce decree which has not been modified, and that our decision in Franklin v. Franklin should be overruled. The court is indebted to the *amici curiae* for their able and helpful contributions.

Sistare v. Sistare, 1910, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905, is the leading case on the subject. There the Supreme Court considered two previous cases, Barber v. Barber, 1858, 21 How. 582, 62 U.S. 582, 16 L.Ed. 226, and Lynde v. Lynde, 1901, 181 U. S. 183, 21 S.Ct. 555, 45 L.Ed. 810, and decided there is no conflict between them.

In the Sistare case the Supreme Court held, at pages 16 and 17 of 218 U.S. at page 686 of 30 S.Ct., that the effect of the Lynde and Barber cases was: "* * * First, that, generally speaking, where a decree is rendered for alimony and is made payable in future installments, the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the Barber case, 'alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is.' Second, That this general rule, however, does not obtain where, by the law of the State in which a judgment for future alimony is rendered the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested

right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due."

· The Supreme Court decided that under the New York statute the trial court in that state did not have power to modify or set aside an installment of alimony after it had become due. It noted, of course, that the New York statute authorizes a court to annul, modify or vary a decree of alimony at any time after final judgment, upon the application of either party after due notice to the other. But the Court was certain, 218 U.S. at page 22, 30 S.Ct. at page 688, " * * * that nothing in this language [of the statute] expressly gives power to revoke or modify an installment of alimony which had accrued prior to the making of an application to vary or modify, and every reasonable implication must be resorted to against the existence of such power in the absence of clear language manifesting an intention to confer it."

■ We regard this as the statement of a rule of construction of such statutes. Applying it, we find nothing in § 16–413 of the District Code which would justify us in holding that Congress intended the District Court to have any power to deal with matured installments of alimony except to enforce payment thereof. In fact, the language of our Code provision falls further short of justifying such a holding than did that of the New York Code which the Supreme Court found insufficient to warrant it.

The Supreme Court has never departed from the principles of the Sistare case, but has reaffirmed them. Griffin v. Griffin, 1946, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635; Yarborough v. Yarborough, 1933, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269.

We conclude, therefore, that the District Court here cannot modify or remit installments of alimony after they have become due by the terms of the original judgment which ordered their payment. When a decree awards alimony payable in future installments, the right to each installment becomes absolute and vested when it becomes due, provided no modification of the decree had been made prior to its maturity. Each installment which matures under a decree which has not been modified becomes a judgment debt similar to any other judgment for money. The original decree is final in character with respect to each matured installment and so cannot be challenged here and should not be challenged elsewhere. Execution may issue upon it. It is therefore unnecessary to seek in the original action a "money judgment," although, upon a showing made to the court of the amount of the matured installments which remain unpaid, it is not improper for the District Court to note of record the amount which is then due under the original judgment.

To the extent that it is in conflict with these views, Franklin v. Franklin is overruled. The case is reversed and remanded for proceedings in conformity herewith.

Reversed and remanded.

FAHY, Circuit Judge, concurring in part and dissenting in part.

I concur in reversal and remand. The further proceedings which should be had, however, in my opinion are not entirely those indicated by the opinions written by Judge Miller and by Judge Washington. I agree with Judge Miller as to the installments which accrued prior to the time minor children, respectively, came of age. These are fixed obligations, or judgment debts, no modification of the amounts having been sought or made prior to the time such instalments became due. To the extent Franklin v. Franklin, 1948, 83 U.S.App.D.C. 385, 171 F.2d 12, is inconsistent with this view, I concur in overruling that case and in reverting to the rule laid down by this court in the earlier cases referred to by Judge Miller. Such indication of a different view as might be gleaned from the statements in the still earlier cases of Tolman v. Leonard, 1895, 6 App.D.C. 224, and Alexander v. Alexander, 1898, 13 App.D.C. 334, 45 L.R.A. 806, is insufficient in my opinion to lead to a different result. This is especially so in view of the approach taken by the Supreme Court to the question of statutory construction in Sistare v. Sistare,

1910, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905, and the references to Sistare v. Sistare in the later cases of Barber v. Barber, 1944, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82, and Griffin v. Griffin, 1946, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635. I should add that I am persuaded to this view not because of the impact in other jurisdictions of the full faith and credit clause of the Constitution on decrees of our local courts, but because I believe our own laws properly construed bring this measure of stability to such decrees.

As to instalments which matured subsequent to the time each of the minors came of age I think they are subject to modification, though the application to that end be filed subsequent to the due date of such instalments. To this extent my conclusion coincides with the views set forth in the opinion of Judge Washington. I would depart from Lockwood v. Lockwood, 1947, 82 U.S.App.D.C. 105, 160 F.2d 923, and the cases therein relied upon, insofar as they are to the contrary.[1]

The reason I distinguish between the instalments which matured prior to the majority of the children and those which matured thereafter is that the decree shows on its face that the instalments are in part for the maintenance of children. This type of provision is authorized by § 16–411, D.C. Code (1940), and is to be read as within the references contained in § 16–413 of the Code to "granting alimony and providing for the care and custody of children," that is, minor children.[2] Thus the monetary part of the decree contains a provision inserted because of a situation which would end with the mere passage of time, namely, the care of minors. In these circumstances the equitable and policy considerations set forth in Franklin v. Franklin, and in the opinion of Judge Washington, in favor of a power of retroactive modification, seem to me to counterbalance the competing considerations which give a more absolute character to arrearages which accrued prior to the majority of the children, when the factual situation to which the decree applied accorded with its terms. The rule adhered to by the majority should not apply to debar modification as of the time changed conditions occurred where the inevitability of their occurrence is forecast by the terms of the decree.

This does not mean, however, that there must be a reduction, or any recoupment of amounts which might have been paid prior to application for modification. Once the decree is opened the changed circumstances on the whole might lead the court to increase the amount, notwithstanding that the coming of age of the children is the basis of the right to obtain reconsideration.

While, therefore, the provisions of § 16–413 of the D.C.Code are in my opinion not in and of themselves sufficient to authorize the court to reduce the amount of arrearages of instalments of alimony, those provisions do not prevent modification of such arrearages where the amount specified in the decree explicitly includes the care of a minor. On equitable considerations such a decree may be modified retroactively, but only to the time the minor became of age; that is, to the time a condition covered by the decree ceased to exist,[3] and only as to

---

1. The actual decision in Miller v. Miller, 1941, 74 App.D.C. 216, 122 F.2d 209, does not seem to me contrary to my views. There this court explicitly stated, "We are not concerned with the question whether the Nevada court now could or would, on application, modify the decree so as to reduce the amount of the alimony, in view of changed circumstances which include the maturity of the children on the one hand and an increase in appellant's salary on the other." 74 App. D.C. at page 218, 122 F.2d at page 211.

2. In Sistare v. Sistare, supra, the coverage of the decree included the maintenance and education of a minor child, but the present point was not expressly considered or decided.

3. Amicus curiae Burnett suggests that unless the words in the decree "maintenance for the children" are surplusage the former husband might be entitled to a credit for that portion of the total which is deductible by reason of the emancipation, or the reaching of majority, by the children.

   I do not specifically discuss the problem involved in the possible death of a child before becoming of age, because unnecessary in the present case.

unpaid instalments. We should read the decree as though it provided in terms, as it does in substance, that the stated amount of each instalment should be paid during the minority of the children or thereafter unless modified by the court. In event of such modification, however, any amounts not previously paid, and which accrued after majority of the children, would be subject to adjustment.

I agree that laches on the part of the wife has not been shown. In all other respects I would at this time do no more than rule that all questions relating to enforcement should be reconsidered and redetermined by the District Court in the light of these views and with the aid of such additional affidavits or other evidence as, in the discretion of the court, might be received on remand.

WASHINGTON, Circuit Judge, with whom EDGERTON and BAZELON, Circuit Judges, concurred:

## I.

The central problem in this case is whether or not the pertinent District of Columbia statute gives the courts of this jurisdiction power to modify an award of alimony so as to cancel or remit in part installments of alimony which are past due.

Our first duty is to examine the wording of the statute itself. It provides: "After a decree of divorce in any case granting alimony and providing for the care and custody of children, the case shall still be considered open for any future orders in those respects." [1]

On the face of it, this legislation gives very broad powers. It permits the court to issue "any future orders" in respect of alimony. And evidently the word "future" is used here as synonymous with "later," [2] so that the phrase means "any orders to be issued at a later time." Common sense would seem to say that "any later orders"

means "all later orders" rather than "some later orders" or "later orders which are not retroactive." The statute by its terms thus appears to permit retroactive modification of alimony awards. Ordinarily we could stop there, for if the statute is clear on its face there is no need to search further. But this problem has had a tangled history in this jurisdiction.

Prior to our decision in Franklin v. Franklin, 83 U.S.App.D.C. 385, 171 F.2d 12, this court had held on three occasions that the courts of this jurisdiction did not have the power which the statute on its face appears to give. The holdings were unequivocal. Caffrey v. Caffrey, 55 App. D.C. 285, 4 F.2d 952; Biscayne Trust Co. v. American Security & Trust Co., 57 App. D.C. 251, 20 F.2d 267; Lockwood v. Lockwood, 82 U.S.App.D.C. 105, 160 F.2d 923. Not one of those decisions, however, attempted to interpret the statute either through its language, or its legislative history, or by what other jurisdictions had done under similar laws, or by considering the policy questions involved in administering the act. Instead, they all relied on certain earlier decisions of this court and the Supreme Court which arose in a different context—namely, under the full faith and credit clause of the Constitution, art. 4, § 1, where the court of one jurisdiction was considering the law of another jurisdiction in order to determine what effect should be given to an alimony decree of that other jurisdiction. The principal cases relied on were Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905, and Phillips v. Kepler, 47 App.D.C. 384. In the Sistare case the Supreme Court said that where the described situation arises, where there is doubt as to the law of the foreign jurisdiction, and where the foreign statute does not expressly provide for retroactive modification of alimony orders, "every reasonable implication must be resorted to against the existence of such power in the absence of clear language manifesting an intention

---

1. Sec. 16–413 of the D.C.Code (1940 ed.); act of March 3, 1901, 31 Stat. 1346, ch. 854, § 978.

2. Webster's New International Dictionary (2d ed., unabridged) defines the adjective "future" as "1. That is to be or come hereafter; that will exist after the present; as the next day is *future* to this. 2. Pertaining or relating to time that is to come; later." (p. 1023)

to confer it." Sistare v. Sistare, supra, 218 U.S. at page 22, 30 S.Ct. at page 688; see also Barber v. Barber, 323 U.S. 77, 82, 65 S.Ct. 137, 89 L.Ed. 82; Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635, to the same effect. It has been ably argued before us, in line with what this court evidently thought on several past occasions, that this rule for the construction of foreign statutes is controlling or at least highly persuasive in the present controversy. On the other hand, this court in Franklin v. Franklin did not consider this reasoning persuasive, pointing out that the full faith and credit clause cases "do not hold that a court which formerly issued an order for maintenance or the like must, re 'rd-less of equity and good conscience, eniorce payment of accrued installments years later. Those cases * * * hold only that other courts should enforce such payment if the court that issued the order would do so. So far as Caffrey v. Caffrey, * * * Biscayne Trust Co. v. American Security & Trust Co. * * * and Lockwood v. Lockwood * * * imply that the issuing court lacks authority to apply equitable principles when asked to enforce payment of accrued installments under its own order, those cases rest on a misunderstanding of the earlier cases and should be overruled." 83 U.S.App.D.C. 385, 386, 171 F.2d 12, 13. (Citations omitted.)

In other words, within the narrow context of the full faith and credit clause, the Supreme Court and this court have laid down a rule for construing the law of other jurisdictions for the purpose of implementing the policy of that clause, so as to give maximum enforcement to the judgments of sister states. Obviously a rule of construction in such a context is hardly binding or even persuasive in a case where the court is interpreting its own statute in the light of its own local policy, totally apart from any considerations as to giving full faith and credit to the judgments of other jurisdictions. Watts v. Watts, 1943, 314 Mass. 129, 49 N.E.2d 609, 612–613; Winkel v. Winkel, 1940, 178 Md. 489, 15 A.2d 914, 922–923. It follows that, as Franklin v. Franklin pointed out, the decisions in the Caffrey, Lockwood, and Biscayne Trust Company cases cannot be considered as settled and final authority expressing the law of this jurisdiction.

It should be noted that Franklin v. Franklin is not the only authority in this jurisdiction holding alimony decrees modifiable retroactively. In Tolman v. Leonard, decided in 1895, this court said: "The allowance of alimony is not in the nature of an absolute debt. It is not unconditional and unchangeable. *It may be changed in amount, even when in arrears, upon good cause shown to the court having jurisdiction.* The fact that such a decree may be sued upon under certain circumstances, or enforced, as is the case in some jurisdictions, by either execution or attachment of the person, or both, does not, in our opinion, change its essential character." 6 App. D.C. 224, 233.[3] (Emphasis supplied.) And the United States Supreme Court, in Audubon v. Shufeldt, in discussing the nature of alimony, quoted this statement from the Tolman case with approval, as it did a statement of an Illinois court that "there may be such circumstances as would authorize the chancellor to even change the amount to be paid by the husband, where he is in arrears in payments required under the decree." 181 U.S. 575, 579–580, 21 S.Ct. 735, 737, 45 L.Ed. 1009; see also Wetmore v. Markoe, 196 U.S. 68, 73, 25 S.Ct. 172, 49 L.Ed. 390. These were cases in which the Supreme Court held arrearages in alimony not provable in or discharged by bankruptcy proceedings. Again, the Supreme Court was speaking in a context other than that here involved, and its statements are in no way controlling in this case. But this again demonstrates that the rule in Sistare v. Sistare for con-

---

3. See also Alexander v. Alexander, 13 App. D.C. 334, 352. Lynham v. Hufty, 1916, 44 App.D.C. 589, is not contrary. There the court held that the lower court could not modify or vacate a judgment adjudicating arrears in alimony. But we specifically said, with regard to an alimony order, that "until complied with [it] is subject to modification by the court, either by increasing or diminishing the amount, *or even by vacating the order.*" 44 App.D.C. 589 at page 599. (Emphasis supplied.)

struing foreign statutes is not here determinative.

## II.

Let us next consider what the courts of other jurisdictions have done with regard to the present problem. First, it may be well to note that the New York courts, subsequent to the decision of the Supreme Court in Sistare v. Sistare, reached a conclusion opposite to the Supreme Court's "implication * * * against the existence of such power"; in interpreting a New York statute substantially identical in all pertinent aspects to that which was involved in the Sistare case, the New York courts held that retroactive modification was permissible. Karlin v. Karlin, 280 N.Y. 32, 19 N.E.2d 669; see 6 A.L.R.2d 1289–1290, 1292–1293. Subsequently, the New York statute was amended so as to leave no possible doubt that this result was

desired by the legislature. Other states with statutes analogous to the one here in issue have reached a similar conclusion.[4] For example, in Watts v. Watts, 1943, 314 Mass. 129, 49 N.E.2d 609, 612, the court held there was power retroactively to modify the decree under a statute which provided that the court may "revise and alter its decree relative to the amount of such alimony or annual allowance and the payment thereof, and may make any decree relative thereto which it might have made in the original suit." A like result has been reached by courts in those jurisdictions where power over alimony is not alone derived from statute but also at least in part is inherent in the equity jurisdiction of the court.[5] There is, of course, considerable contrary opinion, but much of it relies, erroneously we believe, on Sistare v. Sistare and similar cases.[6] Even in those states

4. For an extensive collection of cases and discussion of the subject, see 6 A.L.R. 2d 1277 (1949), where the conclusion is reached that "if there is any point to be gained in characterizing a view as majority or minority, it is submitted that the courts in the majority of the states have the power to grant the husband relief, either directly by canceling arrears or indirectly by refusing to enforce payment or by restraining the wife from collecting arrears." (p. 1279) Reaching the same result as Watts v. Watts, the Massachusetts case discussed in the text, under similar statutes, see Lytle v. Lytle, 1947, 319 Mich. 47, 29 N.W.2d 138; Conklin v. Conklin, 1947, 223 Minn. 449, 27 N. W.2d 275, 6 A.L.R.2d 1274; Ashby v. Ashby, 1921, 174 Wis. 549, 183 N.W. 965. See also Rudd v. Gerken, 1940, 67 S.D. 534, 295 N.W. 491; Duffy v. Duffy, Ch.1941, 19 A.2d 236, 19 N.J.Misc. 332; Madden v. Madden, 1945, 136 N.J. Eq. 132, 40 A.2d 611; Crane v. Crane, 1942, 26 Tenn.App. 227, 170 S.W.2d 663; Wilson v. Wilson, 1947, 143 Me. 113, 56 A.2d 453, 456. Prior to specific statutory prohibition of retroactive modification, the Oregon court held that the power to "set aside, alter, or modify" its decree permitted remittance of arrearages in alimony. Brandt v. Brandt, 1902, 40 Or. 477, 67 P. 508, 510. See Briggs v. Briggs, 1946, 178 Or. 193, 165 P.2d 772, 166 A.L.R. 666. New York has already been discussed. See also Van Dusen v. Van Dusen, 1940, 258 App.Div. 1020, 17 N.Y.S.2d 96.

5. Winkel v. Winkel, 1940, 178 Md. 489, 15 A.2d 914; Ex parte Jeter, 1940, 193 S. C. 278, 8 S.E.2d 490.

6. Holding against the general power retroactively to modify alimony decrees see Epps v. Epps, 1929, 218 Ala. 667, 120 So. 150; Atkinson v. Atkinson, 1936, 233 Ala. 125, 170 So. 198; Rochelle v. Rochelle, 1938, 235 Ala. 526, 179 So. 825 (distinguishing decrees for separate maintenance, which are retroactively modifiable, and those for alimony after divorce, which are not); Adair v. Superior Court, 1934, 44 Ariz. 139, 33 P.2d 995, 94 A.L. R. 328; Johnson v. Johnson, 1935, 46 Ariz. 535, 52 P.2d 1162 (holding retroactive modification permissible back to the date the petition for modification was filed); Greer v. Greer, 1942, 110 Colo. 92, 130 P.2d 1050; Blanton v. Blanton, 1944, 154 Fla. 750, 18 So.2d 902; Igney v. Igney, 1940, 303 Ill.App. 563, 25 N.E. 2d 608; Davis v. Davis, 1937, 145 Kan. 282, 65 P.2d 562; Whitby v. Whitby, 1948, 306 Ky. 355, 208 S.W.2d 68; Snow v. Snow, 1937, 188 La. 660, 177 So. 793; Nelson v. Nelson, 1920, 282 Mo. 412, 221 S.W. 1066; Kelly v. Kelly, 1945, 117 Mont. 239, 157 P.2d 780; Woehler v. Woehler, 1938, 107 Mont. 69, 81 P.2d 344 (as to separate maintenance, can reduce amount with regard to "enforcement"); Schrader v. Schrader, 1947, 148 Neb. 162, 26 N.W.2d 617; Sango v. Sango, 1926, 121 Okl. 283, 249 P. 925; Parenti v. Parenti, 1945, 71 R.I. 18, 41 A.2d 313; Myers v. Myers, 1923, 62 Utah 90,

which interpret their statutes as not permitting retroactive modification generally, many of the courts have read in exceptions for peculiarily appealing circumstances, such as alimony accrued after the remarriage of the wife.[7]

All in all, decisions in other jurisdictions appear to us to offer no support for ignoring or cancelling the grant of power contained in the District of Columbia statute; in our view, they show that such a grant should be regarded as a valued instrument of equity and justice.

### III.

Turning to the policy considerations, the practical factors which reveal the wisdom or unwisdom of judicial decisions, they again suggest that the decision in Franklin v. Franklin is sound. The Court of Appeals of Maryland, a state from which much of our law is drawn, has the following to say in this regard: "The reasons in support of a modification of future instalments of alimony are only less in degree in reference to the instalments which have accrued due. There may have been error in the amount fixed because of mistake in the husband's faculties. The capacity to pay may be materially reduced either by unforeseen diminution in estate or of failure in earnings through incapacity, loss of position or of employment. When the failure to pay is attributable to such a cause, it is equitable to make a conformable modification in alimony which has accrued due. To deny a court of chancery such a power prevents the rectification of an obligation which would not have been created had the chancellor been able to anticipate the later faculties of the husband and defeats the rule that the maintenance afforded the separated wife through alimony is not to be greater than what she would have en-

joyed in cohabitation." Winkel v. Winkel, 178 Md. 489, 15 A.2d 914, 919.

To the same effect is Nelson on Divorce & Annulment, where it is said: "Practically, moreover, there may well be, and frequently are, situations where a husband is brought in, charged with delinquencies, after the lapse of a considerable period of time during which he had reason to believe that his ex-wife was not going to insist on payment in full, or he could not, for one or another sound reason, make the payments ordered. To require that he have made an application for modification of his obligation as soon as he realized his situation is overly technical. He may well not even have realized it, and he may not have had the means to apply or the technical knowledge necessary to appraise what the law would expect of him. A less stringent rule, that the court *may* modify, does not mean that the court *must* modify. It simply retains the power of the court to act in the premises as reason and justice may require. It is therefore submitted that the purpose of statutes authorizing generally the modification of such awards is not limited to future payments, and that such provisions should not be so construed unless their language is explicitly compulsory." (2d ed. 1945, Vol. 2, p. 423.)

Furthermore, there are certain situations in which blind and rigid enforcement of the text of a decree would be thoroughly unjust. For example, if the wife has secretly remarried, without the knowledge of the former husband, what possible justification is there for compelling the latter to pay arrearages accruing after the date of the remarriage? Any rational system of jurisprudence would in such a situation find power to modify the decree retroactively.[8] Or, as in the case before us, the decree may have provided for the support of

---

218 P. 123, 30 A.L.R. 74; Beers v. Beers, 1913, 74 Wash. 458, 133 P. 605; Robinson v. Robinson, 1948, 131 W.Va. 160, 50 S.E.2d 455. Many of these decisions rely on Sistare v. Sistare; few give any reasons for their conclusion other than to state the result.

7. See McHan v. McHan, 1938, 59 Idaho 496, 84 P.2d 984; Parker v. Parker, 1928, 203 Cal. 787, 266 P. 283; Cohen v. Cohen, 1906, 150 Cal. 99, 88 P. 267; Atlass v. Atlass, 1931, 112 Cal.App. 514, 297 P. 53; cf. Keck v. Keck, 1933, 219 Cal. 316, 26 P.2d 300.

8. See cases cited supra note 7.

a minor child; no possible justification exists for compelling the former husband to pay amounts in respect of the child's support for the period after it has reached majority.

We may note that Franklin v. Franklin presented an exceedingly harsh situation. There, subsequent to the divorce, the wife had in effect deserted her children when she took up living with another man. She stated that she did not wish to accept checks made out in her married name, and that her former husband need pay her no more money. The latter thereafter supported some of his children directly, but did not seek court modification of the alimony order until several years later, when the wife sought to collect arrears. Unquestionably the better practice on his part would have been to seek prospective modification of the award. But not all divorced husbands are lawyers. Nor can they always readily obtain or afford advice of counsel. They are faced with a practical situation and act as the circumstances seem to require. Where they act reasonably and in good conscience it seems harsh to penalize them because they were uninformed or unwise and did not seek court aid. Cases prior to Franklin v. Franklin, such as Caffrey v. Caffrey, supra, illustrate the difficulties and inequities which arise when courts charged with responsibility in the domestic relations field are deprived of flexibility in handling the problems before them.

On the other side is the fact that alimony payments should be certain, that they should be promptly met by the husband, and that the latter should not be given the right *sua sponte* to readjudicate the amount he should pay. It can be argued that to permit retroactive modification invites a husband not to pay in the hope that the court will let him off lightly. Further, it has been suggested that retroactive modification may impose hardship on a wife who relied upon the provisions of the decree.[9] There is force to these arguments, but we cannot find them determinative.

For when the District Court exercises its discretion in these matters it should act on the principle that the power to remit arrears may only be exercised in the rare case where unusual hardship and inequity would result from enforcement. And in all cases the circumstances of the wife must be carefully considered, as well as those of the husband. Contempt citations are available against those who in bad faith and without conscience seek to avoid the duties which the alimony order imposes. We wish to make it clear, also, that in our view alimony arrearages should be and are enforceable by execution without the necessity of obtaining a new judgment. We do not think that such enforcement is inconsistent with the existence of power in the District Court to modify its outstanding decree retroactively. See Tolman v. Leonard, 6 App.D.C. 224, 232–233. The husband who fails to come into court to seek modification must take the risk that execution will be issued for the sums he has neglected to pay.

The decision in the Franklin case did not change and was not intended to change the fact that an order awarding alimony imposes an obligation of high seriousness to the individuals involved. The carrying out of that obligation is a duty to the community as well as to the family; it cannot be ignored by the person obligated merely because he has moved from the jurisdiction, or because he has chosen to incur new family ties and responsibilities. What Franklin v. Franklin held was that in a proper case equity could re-study the position of the parties and issue such new or modified orders as might presently be called for, in the exercise of sound judicial discretion. In this aspect, that decision simply brought the law as to arrears in alimony into harmony with the long-established rule, discussed below, permitting the wise use of equitable discretion in withholding the contempt sanction against defaulting husbands. Caffrey v. Caffrey, 55 App.D.C. 285, 4 F.2d 952; Eliasson v. Eliasson, 68 App.D.C. 391, 98 F.2d 263. And, as the

9. Parenti v. Parenti, 1945, 71 R.I. 18, 41 A.2d 313; Davis v. Davis, 1937, 145 Kan. 282, 65 P.2d 562.

decision in Franklin illustrates, it is the rare and unusual case, where the inequity of enforcement seems clear, that justifies retroactive modification of alimony orders. The court's discretion should not be applied in a manner which encourages defendants to delay, or attempt to avoid, complying with their alimony obligations.

## IV.

Such are the reasons which have led us to the conclusion that Franklin v. Franklin was correctly decided. We recognize, however, that it may be suggested that these reasons are outweighed by another consideration, not related to the merits of the central issue but to a collateral matter. That consideration may be stated thus: if it is held that the courts of this jurisdiction have the power to modify a decree for alimony retroactively, it may then follow that District of Columbia alimony decrees will not obtain enforcement, as to arrearages, when suits based on them are brought in other jurisdictions.[10]

The Supreme Court, in interpreting the full faith and credit clause of the Constitution in Lynde v. Lynde, 1901, 181 U.S. 183, 21 S.Ct. 555, 45 L.Ed. 810, and Sistare v. Sistare, 1910, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905, stated that to the extent that a decree of alimony is subject to modification in the jurisdiction where rendered, it is not final and need not be given effect elsewhere. Those decisions have been followed by the great majority of state courts. But they were rendered over forty years ago, and the question as to whether a modifiable decree is entitled to full faith and

credit cannot be considered a closed one. The majority opinions in Barber v. Barber, 1944, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82, and Griffin v. Griffin, 1946, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635, did not reach that question, but specifically left it open.[11] In recent years the law as to full faith and credit has been more fully explicated, and as a result its coverage has in effect been considerably extended beyond that prevailing at the time of Lynde v. Lynde and Sistare v. Sistare. Further, in recent years four Justices of the Supreme Court have strongly expressed the view that finality, in the sense with which we are here concerned, is not a prerequisite to extraterritorial enforcement under the full faith and credit clause.

In Barber v. Barber, supra, Mr. Justice Jackson, in a concurring opinion, said: "Neither the full faith and credit clause of the Constitution nor the Act of Congress implementing it says anything about final judgments or, for that matter, about any judgments. Both require that full faith and credit be given to 'judicial proceedings' without limitation as to finality. Upon recognition of the broad meaning of that term much may some day depend." He deemed it unnecessary to consider whether the alimony decree for which enforcement was sought "might under some hypothetical circumstances be modified." 323 U.S. at page 87, 65 S.Ct. at page 141.

In Griffin v. Griffin, supra, Mr. Justice Rutledge [12] reached the same conclusion with regard to a New York alimony decree. He said:

---

10. See Keck v. Keck, 1933, 219 Cal. 316, 26 P.2d 300; Nelson v. Nelson, 1920, 282 Mo. 412, 221 S.W. 1066.

11. In Barber v. Barber the Court found that under the law of the rendering state retroactive modification was not permissible, and went on to say "it is unnecessary to consider whether a decree or judgment for alimony already accrued, which is subject to modification or recall in the forum which granted it, but is not yet so modified, is entitled to full faith and credit until such time as it is modified." 323 U.S. at page 81, 65 S.Ct. at page 138. In Griffin v. Griffin the suit was not upon the alimony decree itself but a judg-

ment thereafter entered upon the decree for arrears, which judgment the Supreme Court held was void for lack of due process. The Supreme Court specifically pointed out that the plaintiff in that case did not seek relief on the decree itself and accordingly the Court could not have decided what effect should be given that decree. 327 U.S. at page 235, 66 S.Ct. 556. This was in accordance with the Supreme Court's traditional policy of not passing on constitutional questions unless absolutely necessary to the decision.

12. Concurring in part, dissenting in part.

"The judgment under New York law is prima facie valid, if it is not conclusively so. It affords foundation for the issuance and levy of execution. In the absence of timely assertion of grounds requiring it to be set aside, it becomes conclusive.

"This Court has not heretofore held that such a judgment is not entitled to full faith and credit. Contrary dicta reflecting the belief that it would be lacking in necessary finality are, in my opinion, neither conclusive nor sound. Certainly in the absence of any suggestion that the judgment has been questioned in the forum where rendered, adequate opportunity being there afforded, nothing but the most technical and absolute conception of 'finality' could be thought to deprive it of credit. * * *

"The full faith and credit clause does not in any case require that a judgment, to be credited, must be endowed with absolute finality. It is enough, in my opinion, if the judgment is endowed by the law of its origin with finality sufficient to sustain the issuance and levy of execution, although the same law may afford an opportunity for setting aside or modifying it upon the making of a specified showing." 327 U.S. at pages 246–247, 66 S.Ct. at page 568.

Mr. Justice Black joined in that opinion, as did Mr. Justice Frankfurter, who further pointed out: "But it is said that the State rendering the original judgment for alimony may allow, as New York has done here, mitigation of such judgment even as to accrued instalments. If so, such mitigating defenses may be set up when the decree for alimony is sued on in a sister State as well as when enforced in the rendering State. A judgment may have been paid and yet a suit thereon may be brought in another State. While such a defense, if well founded, precludes a second recovery on that judgment anywhere, the availability of such a defense does not bar suit on such a judgment in a sister State." 327 U.S. at page 249, 66 S.Ct. at page 570.

The views expressed by Justices Jackson, Frankfurter, Rutledge, and Black appear to us to have convincing force. The mandate of the full faith and credit clause is sweeping; it sets up no limitations in terms of finality. Further, as a matter of sound public policy we consider that alimony decrees should be given effect in all jurisdictions, whether or not they are subject to retroactive modification. The relative ease with which a person may move from one state to another would permit avoidance of the duty of support under such decrees by that simple expedient, if the full faith and credit clause be construed not to require their enforcement. Such a result would be contrary to the very purpose of that clause, which was designed to weld the separate states into a firmer union and insure that obligations incurred in one state would be enforced in another.

It may be argued, for the contrary view, that the technical difficulties of enforcing a modifiable decree of a sister state render such enforcement impractical. But we do not deem those difficulties to be insuperable. If the law of the sister state is relatively clear as to when modification is permissible, the state in which enforcement is sought may, as Mr. Justice Rutledge pointed out, consider the defenses that could have been raised in the state of rendition. Comparable problems of determining the law of a foreign jurisdiction constantly arise in our Federal system. And, as Mr. Justice Frankfurter has pointed out, "If, perchance, relief from accrued instalments is based on considerations of policy peculiarly within the local understanding and discretionary determination of judges of the originating jurisdiction, sister State tribunals have ample power of abstention to respect such local qualifications." Griffin v. Griffin, 327 U.S. at page 250, 66 S.Ct. at page 570. Thus, the court in which enforcement is sought may hold the case, pending action by the defaulting spouse in the original jurisdiction seeking retroactive modification.[13]

13. Such a procedure has been adopted in an analogous situation, where an otherwise final judgment is on appeal. In such cases the courts of the second jurisdiction will hold the matter in abeyance until the outcome of the appeal in the first state. See Note, 41 Col.L.Rev. 878 (1941).

An alimony decree of the District Court provides basis for execution as instalments accrue without further court action. Until modified, the right of the wife is absolute. Under such circumstances we consider, for the reasons set forth above, that the decree should be entitled to full faith and credit. Further, there may be basis for extraterritorial enforcement apart from the requirements of full faith and credit. Several states have held that as a matter of comity they will enforce a modifiable alimony decree, even as to future instalments.[14] Considerations related to the extraterritorial effect to be given decrees issued in this jurisdiction, therefore, do not in our view constitute any barrier to holding them modifiable.

## V.

We turn now to the question of what disposition should have been made of the instant case by the District Court. In a divorce decree issued in this jurisdiction in 1936, Mrs. Kephart was awarded alimony in the amount of $75.00 per month for the support of herself and her two minor daughters. Appellee, her former husband, remarried not long after the divorce decree and established a new home in Maryland. In 1937 he was held in contempt for failure to pay alimony, but purged himself by paying the amount due. By 1943, however, he had entirely ceased making payments to his former wife. In June 1949 appellant brought this proceeding, seeking a contempt citation and a judgment for arrears. The relief sought was denied, and Mrs. Kephart appealed.

The trial court did not accompany its order by an opinion. The record shows, however, that the husband contended that the appellant-wife was barred by laches. In his affidavit the husband also pointed out that the two daughters of the first marriage had come of age and that he was responsible for the support of two children by the second marriage. In essence, this defense amounts to a request by the husband that the trial court exercise its equitable discretion in two somewhat related but different respects: As to the first, the defense of laches, the husband is contending that the lapse of time, the delay in seeking enforcement, and the change in circumstances, as a matter of equity bar the wife from any relief whatever. Secondly, he is contending that the trial court should reconsider the circumstances of the parties and as a matter of discretion deny the wife relief both as to the contempt citation and the judgment for arrears.

As we have noted, the trial judge denied all relief to the appellant-wife. As he made no findings of fact or conclusions of law, and gave no explanation for his decision, it is possible that he concluded that the wife was barred by laches and that there was no need or occasion for the exercise of discretion either with respect to the issuance of a citation for contempt or a judgment for arrears in alimony. If this was the basis for the trial judge's decision, we are of the view that he was in error. If he concluded that the defense of laches was not available here, but that as a matter of equitable discretion he would deny all relief to the appellant-wife because of the change in the circumstances of the parties, we think there was an abuse of that discretion.

First, as to laches: While laches may in some instances be a defense to proceedings such as this, the circumstances must be such as to show not merely some element of hardship to the husband, but also that default or delay by the wife was in part the cause of that hardship. Here, the husband's absence from the jurisdiction, and the wife's poverty, illness, and difficulties in obtaining counsel, all indicate that whatever delay there has been should not operate as a complete excuse to the husband. Marshall v. Marshall, 164 Md. 107, 163 A. 874. There was no showing that the husband assumed new obligations in reliance upon any statements or actions by his former wife. No elements of estoppel were present. The wife constantly requested that he comply with the court order. In cases of far longer

14. See 3 Nelson, Divorce & Annulment, § 33.47 (2d ed. 1945); Note, 132 A.L.R. 1272 (1941).

and less justifiable delay the courts have held the defense of laches not available.[15].

Second, as to the exercise of equitable discretion apart from laches: It has long been the law in this jurisdiction that under certain circumstances of hardship a husband will not be held in contempt for default in meeting instalments of alimony. Thus, in Caffrey v. Caffrey, 55 App.D.C. 285, 4 F.2d 952, this court held that where the husband was injured and unable to find employment, and as a result was without funds to pay the alimony due, he would not be held in contempt. Similarly, where other circumstances of severe hardship existed: Eliasson v. Eliasson, 68 App.D.C. 391, 98 F.2d 263. But, at the same time, this court has held that where the lack of funds was due to the voluntary assumption of obligations on the part of the husband and lack of diligence in attempting to find employment, the defaulting spouse would not be excused from his obligations and contempt proceedings would be entertained. Kelly v. Kelly, 78 U.S.App. D.C. 97, 137 F.2d 254. And, as to the question of enforcing or remitting arrears in alimony, we consider that for the reasons we have given the decision in Franklin v. Franklin should remain the controlling statement of the law.

In the case now before us, the appellant-wife was prima facie entitled to the relief which she requested. We see no circumstances here which would justify denial of all relief to her. As to the judgment for arrears, the relief the wife requested should be granted, unless the court modifies the alimony order in the exercise of sound judicial discretion, within the frame of reference outlined above. With regard to the citation for contempt, again that relief should be granted unless the court, exercising sound judicial discretion, finds that circumstances mitigating the husband's default are such as to make the contempt citation unduly harsh.

We consider, therefore, that the judgment of the District Court should be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

15. See cases collected in 137 A.L.R. 894.