Donald **CEFARATTI**, Jr., Appellant,

v.

Helen **CEFARATTI**, Appellee (two cases).

Helen **CEFARATTI**, Appellant,

v.

Donald **CEFARATTI**, Jr., Appellee.

Nos. 7344, 7346 and 7559.

District of Columbia Court of Appeals.

Argued Nov. 29, 1973.

Decided Feb. 13, 1974.

John V. Long, Washington, D. C., for appellant in No. 7559 and for appellee in Nos. 7344 and 7346.

Ben Paul Noble, Washington, D. C., with whom Thomas O. Mann, Washington, D. C., was on the briefs for appellant in Nos. 7344 and 7346 and for appellee in No. 7559.

Before KERN, GALLAGHER and PAIR, Associate Judges.

PAIR, Associate Judge:

This case is before the court on consolidated appeals arising out of the disposition by the trial court of a marital dispute. The wife is the appellee in appeals Nos. 7344 and 7346 and the appellant in appeal No. 7559.

The action was commenced with a complaint by the wife for a divorce and other relief or, in the alternative, for separate maintenance and support. During the pendency of the action the husband was on November 7, 1972 ordered to pay the wife $1,500 monthly for her separate maintenance and the support of the three minor children born of the marriage.[1] After protracted discovery procedures and several contempt proceedings for failure of the husband to comply with pendente lite orders of the court, the cause came on for trial. Prior to its commencement, however, the court, on motion of the husband and no doubt after consideration of a stipulation entered into by the parties on December 28, 1972,[2] vacated an order entered April 5, 1972 holding that such order had been entered ex parte and without first determining the husband's ability to pay.[3] In addition, the court observed that there had been a substantial delay in docketing the April 5, 1972 order.[4] The court then announced:

> We will proceed with the trial. I will determine at the conclusion of the trial what should have been the appropriate award of maintenance and support,[5] and date it from that time and deduct from any final amount those sums which the defendant [husband] has contributed pursuant to the docketed entry of the Order of April fifth, which occurred November 20.
>
> .    .    .    .    .    .

The idea of suit money and counsel fees necessary for litigation will be, also, entertained by me and I'll make a proper award. . . .

At this point in the proceedings, counsel for the husband addressed the court saying:

> [M]ay I represent to the Court that in light of Your Honor's ruling on the motion to reconsider and the motion for entry of the Order of April five, nunc pro tunc, the defendant will, at this time, waive all rights to an appeal arising out of the various motions relating to the April Fifth Order, and will represent to the Court that it now will waive its right to an appeal based on his contention with respect to its service of process . . . . .[6]

After trial of the issues the court, by its judgment entered March 7, 1973, denied the wife a divorce, but granted her custody of the three minor children born of the marriage. The court then granted the wife the alternative relief she sought and ordered the husband to pay thereafter $1,350 monthly for the separate maintenance of the wife and the support of the children. The court entered also a money judgment against the husband for $11,800 representing the amount of pendente lite support money determined to be due the wife, after crediting the husband with the sum of $3,000. In addition, the court awarded the wife $5,332 for attorney's fees and suit money.

1. The order, based as it was upon detailed findings of fact respecting the husband's income, was never challenged nor was it disturbed until, after trial, it was modified by the judgment and order entered March 7, 1973.

2. Then pending contempt proceedings were disposed of by the stipulation and the husband agreed to comply with the order entered November 7, 1972 pending further order of the court.

3. The April 5, 1972 order required only the payment of suit money and attorney's fees.

4. For reasons never fully explained, the order was not entered until November 20, 1972.

5. Both the trial court and counsel for the parties seem to have thought that it was the April 5, 1972 order which required the payment pendente lite of $1,500 monthly for maintenance and support.

6. We have considered, nevertheless, the husband's contention made at trial and renewed on this appeal that he was not properly served with process in the wife's action for divorce; and we have found the contention to be wholly without merit. D.C.Code 1973, § 17–305(a).

A motion for a new trial or, in the alternative, to amend the judgment and order was denied. Appeal No. 7346 followed—the husband claiming reversible error in the failure of the trial court to make, as a condition precedent to any award for separate maintenance and support, a specific finding as to his net income. The wife thereupon filed a cross-appeal (No. 7559), contending principally that the amount awarded for the support of the children and for her separate maintenance was inadequate.[7]

Sometime thereafter the trial court, upon motion of the wife and on the basis of findings of fact, entered on April 17, 1973, an order adjudging the husband in contempt of court for his willful failure to comply with the March 7, 1973 judgment and order. The court then punished the husband by sentencing him to a term of 90 days' imprisonment or until such time as he complied with such order. Execution of the sentence was, however, stayed for ten days on condition that the husband, during that period, purge himself of contempt. By his appeal No. 7344, the husband challenged the contempt order. We affirm in all respects the order entered March 7, 1973 and affirm also the contempt order entered April 17, 1973.

At the trial the evidence was in substance that "when the marriage started falling apart," the husband's net worth was in excess of $300,000; that in 1971 his income from the practice of law was approximately $64,636; and that in 1972 his income was in excess of $57,000. In addition to the home valued at approximately $100,000 which he owned jointly with his wife, the husband had other real estate holdings, including a property valued at approximately $56,000 which yielded monthly an income of some $550.00.

There was also testimony by a certified public accountant substantially corroborative of the testimony respecting the husband's income in 1971, his income in 1972, and the "cash flow" in his accounts, with particular reference to one account in which there was a "cash flow" of over $3,000 each month.

The testimony of the wife was that during the years 1970 and 1971 she was furnished by her husband approximately $2,300 monthly for household expenses, mortgage payments, food, clothing, medical expenses and the children's tuition. Testimony in regard to her present needs for comparable maintenance and the support of the three children was uncontroverted.

From this testimony the trial court found that the husband was a successful practicing attorney whose income had fluctuated between $30,000 and $60,000 for several years. Taking guidance from this court's holding in Leibel v. Leibel, D.C. App., 190 A.2d 821 (1963),[8] the trial court then ordered the husband to pay monthly for the maintenance of the wife $350.00 and $333.33 for the support of each of the three children—a total of $1,350.

■ The substance of what we understand the husband to contend on these appeals is that the judgment and order entered March 7, 1973, should not be permitted to stand because the court made no specific finding as to his net income. In this connection, however, the husband says

7. The wife claimed no error in the denial of her complaint for a divorce.

8. The amount of alimony to be awarded and the division of jointly held property are matters which are entrusted to the sound judgment of the trial court. In exercising that judgment consideration must be given to all facts and circumstances surrounding the parties and the ultimate decision must be the result of considered judgment. It is an overall judgment, not measured by any yardstick, rule of thumb or mathematical formula. It is not necessary in awarding alimony to a wife that the trial judge ascertain with accounting accuracy the exact financial needs of the wife; it is only necessary that the award have a reasonable basis in the evidence. If it has such a basis this court cannot substitute its judgment for that of the trial court.

at page 5 of his reply brief in appeal No. 7344:

> [W]e have not urged this Court to vacate the underlying order [March 7, 1973], and doubt the Court's power to do so . . . .[9] What we have asked of this Court is to remand, consistent with the holding in *Mumma*, for a determination of the net income of the Appellant, and to vacate the order finding him in contempt. . . .

But Grasty v. Grasty, D.C.App., 302 A.2d 218 (1973), and Mumma v. Mumma, D.C.App., 280 A.2d 73 (1971), aff'd after remand, 295 A.2d 898 (1972), upon which the husband relies, are clearly distinguishable on their facts. It is true, of course, that in *Grasty* and *Mumma* we overturned awards of alimony because the trial court made no finding as to the husband's net income and, in the absence of such a finding, we were unable to determine whether the trial court had considered the husband's ability to pay. But in *Grasty* it was undisputed that the husband had no income other than his government salary and no securities or real estate. Under the circumstances the husband's net income was not only easily ascertainable but was essential to any meaningful decision as to his ability to pay.

Here the husband is a professional man with a substantial—though fluctuating—gross income. In addition, he had extensive real estate holdings and a "cash flow" in at least one of several bank accounts of over $3,000 monthly.

■ We hold therefore that when, as in this case, the husband involved in such a marital dispute is a professional man with a history of substantial earnings, extensive real estate holdings and a large "cash flow" of bank deposits, it is sufficient that the trial court satisfy itself from the sum total of the evidence that the husband has the ability to maintain his wife and children in a manner comparable to the standard of living to which the parties were accustomed at the time of the separation, and has refused to do so. D.C.Code 1973, § 16–916(a); Bradt v. Bradt, D.C.App., 300 A.2d 445 (1973). *See also* Green v. Green, D.C.App., 217 A.2d 658 (1966); DeWitt v. DeWitt, D.C.App., 201 A.2d 527, 528 (1964). In our opinion the amounts awarded in this case were within the range of the court's permissible discretion and we cannot say that the findings upon which the judgment was based were plainly wrong and without support in substantial evidence. Springer v. Springer, D.C.App., 248 A.2d 822 (1969).

■ Substantially the same thing must be said in regard to the contempt order entered April 17, 1973. The trial court having, by its judgment entered March 7, 1973, determined the husband's ability to pay the amounts awarded, his obedience to the order—until modified or overturned—was required. *See* United States v. United Mine Workers of America, 330 U.S. 258, 293–295, 67 S.Ct. 677, 91 L.Ed. 884 (1947). *See also* Kephart v. Kephart, 89 U.S.App.D.C. 373, 380, 193 F.2d 677, 684 (1951), cert. denied, 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952). The finding that the husband had wilfully disobeyed the order was sufficient in our opinion to support the adjudication of contempt.

Affirmed.

---

9. Certainly, if for any reason the March 7, 1973 judgment and order should fail, then the unchallenged order entered November 7, 1972 would again control the husband's duty of maintenance and support. Kephart v. Kephart, 89 U.S.App.D.C. 373, 380, 193 F.2d 677, 684 (1951), cert. denied, 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952).