[No. 33440.   Department Two.   February 9, 1956.]

ELIZABETH B. GAIDOS, *Appellant*, v. GEORGE F. GAIDOS, *Respondent.*[1]

[1]Reported in 293 P. (2d) 388.

*Mary E. Burrus,* for appellant.

*Peyser, Cartano, Botzer & Chapman* and *Robert A. O'Neill,* for respondent.

ROSELLINI, J.—The parties to this action are a divorced husband and wife, both of whom have remarried. The dispute concerns the liability of the former to contribute to the support of the two minor sons of the parties, now aged fourteen and nine years.

The respondent lives in Seattle with his present wife and her minor son. Both the respondent and his wife are employed, earning a combined monthly income of $668.44. They own equities in two automobiles and a home. In addition, they own their furniture, a small savings account and insurance.

Until August 1954, when the appellant remarried and moved with her present husband to Arlington, Virginia, the children visited in the home of the respondent regularly each month. He paid one hundred dollars per month for their support and maintenance, pursuant to the terms of the final decree of divorce, which was obtained by the appellant on October 20, 1950.

The appellant and her present husband are employed in Washington, D. C., and have a combined monthly income of $728.12. In addition thereto, her husband receives $65 per month rental from a home in which he owns an equity in Salt Lake City, which sum is turned over to his mother for her support. The appellant owns an equity in a home in Seattle; her husband has an automobile and insurance; together they own their household furnishings and a small checking account.

On December 30, 1954, some five months after the appellant had taken the children to Virginia, the respondent petitioned for modification of the divorce decree, asking that support payments be discontinued upon the ground of changed circumstances, namely, that he is no longer able to visit with the children and they are not in financial need of his support.

In her answer, the appellant denied that the children do not need their father's contribution to their support. By way of affirmative relief, she asked that the court determine which parent is entitled to claim exemptions for the children for income tax purposes for the years 1950, 1951, and 1952, and that, if the exemptions were allowed the respondent, the support payments be increased to offset the consequent loss to the appellant. The trial court refused to consider this question, finding that the matter was exclusively within the jurisdiction of the Federal tax authorities.

The court determined that the children had become alienated from their father; that they could be adequately supported by their mother and stepfather; and that it would be to their best interests to cut off the respondent's visitation privileges, a finding of which the respondent does not complain. Because this tie was being severed, the court concluded that he should be relieved of all liability for support until further order of the court, including his duty to carry certain insurance for the children provided for in the final decree of divorce.

The appellant's major contention is that the circumstances found by the court were not sufficient to justify the relief given to the respondent. She also denies that the children have become alienated from their father.

We will deal with the latter contention first. The record discloses that the children are more or less indifferent to their father and devoted to their stepfather, but it does not appear that this indifference is due any less to the lack of warmth on their father's part than to the lack of encouragement on the part of their mother. While their testimony, taken by deposition, reveals a certain resentment toward him, it falls short of hostility. When Stephen, the younger of the boys, was asked, "Do you like your father?" he replied, "Not too well." The reason he gave was that "he sort of gets—sort of rough at us."

Geoffrey, the older boy, stated that sometimes he liked his father and sometimes he was angry with him because, "Sometimes he does things that I don't believe are justice."

When visiting in their father's home, they played with

their stepbrother, watched TV, and attended shows. Since they have lived in Virginia, he has written to them once. The letter, asking them what presents they would like, arrived the day before Christmas, and the boys did not answer it.

Their mother, according to their testimony, has talked to them very little about their father. She told them once, several years after the divorce, that he had left the family to marry another woman; and she told them, prior to the taking of their depositions, about the difficulties over the income tax exemptions.

The appellant, on cross-examination, testified that she did not question the boys about their visits with their father and did not suggest that they write to him. She was, however, perfectly willing for them to visit with their father and to make a trip back to Seattle during the summer vacation, provided they were accompanied by an adult.

The attitude of the respondent, on the other hand, is manifested by his satisfaction with the modification decree, divesting him of all visitation privileges.

It is evident that these boys are not as close to their father as they are to their stepfather, but the alienation which exists can be attributed largely to the separation naturally attendant upon the divorce of their parents, as well as the lack of any serious effort on the part of their father, during their visits, to win their confidence and affection.

■■ While it is true that a change of custody may be justified by an attempt on the part of the parent having custody to poison the mind of a child against the other parent, we know of no theory under which the child may be deprived of its right to be supported by its parent by reason of such conduct. Much less will the mere indifference of the child, brought about by circumstances over which it has no control, deprive it of this right. Nor can a parent rid himself of his responsibility to the child by willingly relinquishing his visitation privileges.

■ The duty to make support payments is not contingent on the convenient exercise of the right of visitation. *Corson v. Corson,* 46 Wn. (2d) 611, 283 P. (2d) 673; *Lear v.*

*Lear,* 29 Wn. (2d) 692, 189 P. (2d) 237; *Wheeler v. Wheeler,* 37 Wn. (2d) 159, 222 P. (2d) 400; *Sanges v. Sanges,* 44 Wn. (2d) 35, 265 P. (2d) 278. As we held in *Corson v. Corson, supra,* and *Lear v. Lear, supra,* the mother may take the children out of the jurisdiction even though it deprives the father of visitation privileges, where the decree has not forbidden her to do so. In reversing an order of the trial court relieving the father of the duty to make payments while the child was out of the jurisdiction, we said in the latter case:

"In all such questions as that here presented, the primary consideration is the welfare of the child. The right of seeing and enjoying the company of his child, which was conferred upon respondent by the interlocutory order and the decree of divorce, is, of course, a valuable right, of which respondent should not be deprived save for good and sufficient reasons. However, respondent's obligation to contribute toward the support of his child is of greater and more basic importance."

The extent of a parent's duty to contribute to the support of his minor child depends upon the child's need and the parent's ability to pay; it is not a *quid pro quo* for the visitation privilege. See *In re Jones,* 41 Wn. (2d) 764, 252 P. (2d) 284. In *Wheeler v. Wheeler, supra,* we sustained the trial court's action in reducing the amount of support payments where the father's responsibilities with his second family were burdensome and the mother had remarried with a consequent improvement in her financial situation.

Here there was no attempt to show that the respondent is financially unable to continue the support payments; and the mother testified that it was necessary for her to work to supplement these payments in order to provide the children with clothes and the educational and recreational activities which were important to their welfare, including scouting and music lessons. The fact that the stepfather is able and willing to contribute to their support does not relieve the father of his responsibility, which continues until such time as they are adopted, reach majority, or are otherwise emancipated.

■ We find nothing in the record to justify a reduction in or termination of the payments required by the interlocutory and final decrees of divorce, including the maintenance of insurance policies for the benefit of the children, nor any good reason for the termination of the father's visitation privileges.

■ The appellant contends that the court erred in refusing to determine the proper person to claim the income tax exemptions for the children for the years 1950 through 1952. We need not decide whether the ruling was correctly based on the assumption that the question is solely within the jurisdiction of the Federal tax authorities, since the relief prayed for would require a retroactive modification of the original decree. Under our ruling in *Sanges v. Sanges, supra,* the superior court is without power to effect such a modification, and the relief was properly refused.

The judgment is reversed and the cause remanded, with directions to dismiss the petition.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.

March 22, 1956. Petition for rehearing denied.