Thomas William C. ADAMS, Appellant,

v.

Harriet Rita ADAMS, Appellee.

No. 3293.

District of Columbia Court of Appeals.

Argued Nov. 4, 1963.

Decided Jan. 24, 1964.

Barnum L. Colton, Jr., Chevy Chase, Md., with whom Nicholas J. Chase, Washington, D. C., was on the brief, for appellant.

Roy Garvin, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

As result of a suit filed by the former wife of appellant seeking support and maintenance for their minor daughters, the trial court on February 21, 1961, entered an order, with consent of the parties, awarding custody of the two minor children to their mother, appellee, with reasonable rights of visitation for the father, and directing appellant to pay for the support of the children during their minority. Payment was to be made through the clerk's office of the Domestic Relations Branch.

Less than a month later appellee petitioned for consent to take the children to England for three months for a visit to their maternal grandparents. On June 8, 1961,

judicial approval for such visit was given on condition that the children be returned to this jurisdiction not later than July 17, 1961. Instead of taking the children to England, however, the mother took them to Tangier, Morocco, where she married a native of Iraq resident in Morocco and has continued to reside there with the children since that time.

When the children were not brought back to this jurisdiction, the trial court found the mother in contempt and sentenced her to thirty days in jail and a fine of $10 per day until the children were returned. At the same time the father was directed to continue his payments for the children through the clerk's office, which payments were to be held in escrow until further order of the court. An appeal was taken by the mother from this order.

We held [1] that due to the conduct of the mother in departing from this jurisdiction with the children, thus "making herself immune from process of any court of this jurisdiction and depriving such courts of all control over the children," any further order respecting the children or their mother could not be enforced. We declined to pass upon the merits of her appeal and ruled that unless the children were returned to this jurisdiction within ninety days, the appeal would stand dismissed. As neither the mother nor the children returned within that time (or thereafter), the appeal of the mother was dismissed.

Following the filing of a motion in the trial court by the father in 1962 to reduce or eliminate the monthly support payments he had been ordered to make and to transfer to him the unused accumulated funds in the custody of the court, a new order was issued March 6, 1963, overruling his motion, appointing a trustee under bond, and directing the clerk of the court to turn over and transfer to the trustee all funds held under the original support order of February 21, 1961. This was done and the funds are now on deposit in the name of the trustee. The present appeal is by the father from this order.

Appellant asserts, *inter alia,* that the trial court lacked jurisdiction to make such a ruling, that it abused its power and acted arbitrarily, and, as there was no showing of present need for support of the minor children, the payments should have been terminated.

The posture of the case has not changed since we ordered the mother to return the minor children to this jurisdiction. The father has continued to make the payments as ordered, but they could not be utilized by the mother and legal custodian. Our courts are still without power to enforce their orders for the benefit of the children.

By disobedience, deliberate and wilful, to the agreed terms and conditions of the custody award and of the order approving a short trip to England, the mother has not only placed the children where they are not accessible to their father but has arrogated to herself their full control. After seeking the aid of the court to secure support for the children and accepting custody conditioned upon the right of the father to see and associate with his minor daughters, appellee thereafter, by removing the children from this jurisdiction, completely negated the order of custody and deprived both the father and the court of their respective right, duty and obligation to exercise continued supervision of the children and provide for their welfare.

■ In view of the situation created by the mother, we are of the opinion that the circumstances of the present case carry it beyond the general rule that a father's duty to support his minor children is undiminished by any controversy between the parents or the delictum of the mother.[2] Here we have no showing of any distress or destitu-

1. Adams v. Adams, D.C.Mun.App., 184 A. 2d 213.

2. Britt v. Britt, D.C.Mun.App., 153 A.2d 644; Edmonds v. Edmonds, D.C.Mun. App., 146 A.2d 774.

tion or real want of any kind by the children. The father has been complying with the support order, but the payments have been accruing, unexpended. As the mother has had no use of these sums for the care of the children, it must be assumed that she has been providing for them from her own resources, for which she is not entitled to reimbursement from the funds on hand here.

There is nothing in the record before us to indicate that termination of the support order would in any way penalize the children. At any time they are returned to this jurisdiction, the courts will be open to them for resumption of their supervision and care as *parens patriae* and will consider their needs in the light of their father's ability to pay. Now, however, the mother should not be permitted to dictate from Morocco the terms of support to meet her own ideas of compliance with the orders of court. To make the funds available to her would only further aid and encourage her in continued rebellion against the court's proper authority. She has shown no respect to date for the edicts of the court, and there is little expectation she will do so in the future; and in view of her past conduct, little reliance can be placed on any statements now made by her by way of affidavit or otherwise.

As the support payments heretofore contributed by the father have not been utilized for the maintenance of the children, and as appellee is not entitled to be reimbursed from these funds for the support she has been presumably providing them, we hold that the payments should be forthwith terminated.[3]

■ We are further convinced that the trial court was without authority to appoint a trustee to take over the accumulated sup-

port payments made by the father through the clerk's office. These monies represent contributions for specific periods for current support and cannot be kept, when not used for that purpose, for anticipated future needs of the children. We are not dealing with a problem of modification or remission of unpaid support instalments,[4] but with fully-paid support payments which were not used for the specific purpose designated in the order of support. We hold that they should be returned to the father as lawful owner of monies not distributed for the children's maintenance at the times designated.

Accordingly, it is our ruling, for the reasons stated, that

(a) the order of February 21, 1961, be modified to terminate any future support payments for the two minor children, until further order of the court;

(b) the order filed March 6, 1963, be modified to vacate and set aside the appointment of Paul M. Conway, Esq., as trustee, with directions to him to make an accounting of all funds that have come into his possession and to transfer all such funds to the Chief Deputy Clerk, Domestic Relations Branch; and

(c) the Chief Deputy Clerk, Domestic Relations Branch, shall then pay over said funds, so received from the aforesaid trustee, to appellant Thomas William C. Adams upon his written receipt therefor.

Reversed with instructions.

QUINN, Associate Judge:

I dissent from the majority opinion because I find it contravenes the general rule

---

3. The custody order embodying support as approved by both parents and by the court was geared to meet the children's needs in the District of Columbia and not in a foreign land where their maintenance

requirements might be understandably different

4. Kephart v. Kephart, 89 U.S.App.D.C. 373, 193 F.2d 677, cert. denied 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702.

that children are not to be deprived of support because of their parents' misconduct; that it violates the rule of Kephart v. Kephart, 89 U.S.App.D.C. 373, 193 F.2d 677 (1951), cert. denied 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952); and that it emasculates the equitable powers of the Domestic Relations Branch of the trial court by stating that it was without authority to appoint a trustee to dispose of funds held in escrow for the benefit of minor children.

As the majority opinion indicates, this case is a sequel to Adams v. Adams, D.C. Mun.App., 184 A.2d 213 (1962). There we ruled that unless the wife returned the children to this jurisdiction within ninety days her appeal would stand dismissed. At the expiration of the ninety-day period, an order to show cause issued, and it appearing that the children had not been returned, we dismissed the appeal on January 2, 1963.

The present appeal stems from a motion filed by the husband on April 23, 1962, seeking a reduction or elimination of the monthly support payments for the children. On May 4, 1962, the wife entered an opposition to the motion contending the same question was then pending on appeal. The trial court sustained the wife's objection and a hearing was not held on the merits of the motion until March 4, 1963. Thereafter the trial court issued the following order:

"This matter came on for a hearing on defendant's Motion for Reduction of or Elimination of Maintenance and for Release of Funds in Custody of the Clerk of the Domestic Relations Branch and plaintiff's opposition thereto; and

"IT APPEARING to the Court that the original Order for maintenance herein signed by Judge Frank Myers, February 21, 1961, bears the written consent of both parties and their counsel; and it

"FURTHER APPEARING from the affidavits of record and from the proffered testimony of defendant that there has been no substantial change in defendant's earning ability and that there is no justification at this time for any change in the maintenance provisions; and it

"FURTHER APPEARING that this Court has found that the defendant, as the father of the two minor children herein, has the responsibility for providing sums for support of his children regardless of the contemptuous conduct of the plaintiff, their mother, it also

"APPEARING that the Clerk of this Branch of the Court is in the possession of sums of money which have been paid by the defendant for the support of the minor children herein which this Court has ordered him to hold pending further order, it is, therefore, this 4th day of March 1963,

"ADJUDGED, ORDERED and DECREED that defendant's Motion for Reduction of or Elimination of Maintenance and for Release of Funds in Custody of the Clerk of the Domestic Relations Branch be and hereby is overruled.

"FURTHER ORDERED that Paul M. Conway, Esquire, be appointed trustee in the above-entitled cause and that the Clerk of this Court is hereby directed to release to Paul M. Conway, trustee, any and all funds collected or to be collected under order of February 21, 1961, in the above-entitled cause, provided said trustee file an undertaking in the amount of three thousand ($3,000) with approved surety, said trustee to account annually to the Clerk of this Court."

The husband appealed and has convinced the majority that all future support payments should be terminated, the trustee discharged, and the funds held in escrow returned.

I thought it too well-settled for argument that a father's duty to support his children is not affected by the merits of a controversy with his spouse, Howard v. Howard, 72 App.D.C. 145, 112 F.2d 44 (1940), and that his duty is one imposed by law as distinguished from a moral obligation. Edmonds v. Edmonds, D.C.Mun.App., 146 A. 2d 774 (1958). While the mother has effectively terminated the father's visitation privileges by taking the children to Morocco, it is improper to penalize them for her misconduct. Aaron v. Aaron, 228 Ark. 27, 305 S.W.2d 550, 552 (1957); Commonwealth ex rel. Firestone v. Firestone, 158 Pa.Super. 579, 45 A.2d 923, 924 (1946); Pendray v. Pendray, 35 Tenn.App. 284, 245 S.W.2d 204, 206 (1951). The extent of a parent's duty to contribute to the support of his minor child depends upon the child's need and the parent's ability to pay; it is not a *quid pro quo* for the visitation privilege. Gaidos v. Gaidos, 48 Wash.2d 276, 293 P.2d 388, 390 (1956).[1] We have only recently ruled that a father cannot evade his responsibility toward his minor children because of some complaint or grievance which he entertains toward the mother and her second husband. Prager v. Smith, D.C.App., 195 A.2d 257 (1963). Similarly, we have refused to suspend support payments where a father's visitation rights were arbitrarily denied by the mother. Sens v. Sens, D.C.Mun.App., 186 A.2d 226 (1962).

Contrary to these reasoned authorities, the majority opinion states:

"*In view of the situation created by the mother,* we are of the opinion that the circumstances of the present case carry it beyond the general rule that a father's duty to support his minor children is undiminished by any controversy between the parents or the delictum of the mother.

\*   \*   \*   \*   \*   \*

"*Now, however, the mother should not be permitted to dictate from Morocco the terms of support to meet her own ideas of compliance with the orders of court.* To make the funds available to *her* would only further aid and encourage *her* in continued rebellion against the court's proper authority." (Emphasis supplied.)

I think it is clear that my colleagues are determined to punish the mother for her contemptuous conduct. I would rather consider the best interests and welfare of the children. Since there has been no showing that the children are without need of current support, I would continue the father's obligation for future support payments.[2]

In Kephart v. Kephart, 89 U.S.App.D.C. 373, 380–381, 193 F.2d 677, 684 (1951), cert. denied 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952), our highest court ruled:

"\*   \*   \*   that the District Court here cannot modify or remit installments of alimony after they have become due by the terms of the original judgment which ordered their payment. When a decree awards alimony payable in future installments, the right to each installment becomes *absolute* and *vested* when it becomes due, provided no modification of the decree had been

---

1. Compare Jackson v. Jackson, 107 U.S. App.D.C. 255, 276 F.2d 501 (1960), cert. denied 364 U.S. 849, 81 S.Ct. 94, 5 L.Ed. 2d 73, where this principle was recognized, although authorities were cited to the contrary.

2. The father, the party upon whom the burden rested, sought to introduce evidence of a change in circumstances justifying a modification of the original support order. His proffer of testimony, which contained all the evidence he wished to present, was rejected by the trial court. It was limited to showing a change in his ability to provide for the children and did not include evidence of a change in the children's needs. Even assuming that residence in another country is sufficient, by itself, to satisfy the father's burden, I would remand to the trial court for further proceedings rather than terminate, sua sponte, all future payments.

made prior to its maturity. Each installment which matures under a decree which has not been modified becomes a judgment debt similar to any other judgment for money. The original decree is *final in character with respect to each matured installment and so cannot be challenged here and should not be challenged elsewhere. * * *"* (Emphasis supplied.) [3]

In violation of this rule, the majority opinion finds that "fully-paid support payments" may be wholly returned where the specific purpose for which they were made no longer exists. I cannot agree that there is a valid distinction between "unpaid support installments" which are in arrears and "fully-paid" sums which are held by the court. In either case the specific month for which the payment was designated has passed and the intended recipient has been forced to manage without the funds. To hold that the arrearages must be paid over, but that the held monies may be returned is to cut a meaningless distinction. Has not the specific month passed for which the arrearages are collected?

The true purpose of the majority opinion is revealed by the following:

"As the mother has had no use of these sums for the care of the children, it must be assumed that she has been providing for them from her own resources, for which she is not entitled to reimbursement from the funds on hand here."

While the mother may be barred from reimbursement for any sums expended in the children's behalf—because her contemptuous conduct has deprived her of any standing to sue—I think it is equally probable that her new husband is supplying necessaries for the children. Since we have

only recently ruled that "a husband is under no basic duty to support a 'stepchild,'"[4] it follows that he would not be precluded from seeking reimbursement for necessaries supplied to the children. Consequently, I think the return of the accumulated funds violates the Kephart rule and is based upon a false premise.

Lastly, I disagree with the conclusion that the trial court was without authority to appoint a trustee to take over the accumulated support payments. When Congress created the Domestic Relations Branch of the trial court it provided:

"(a) The Domestic Relations Branch is hereby vested with so much of the power as is now vested in the United States District Court for the District of Columbia, whether in law *or in equity,* as is necessary to effectuate the purposes of this subchapter, * * *." (Emphasis supplied.) [5]

I think this Code provision is clear authority for the action taken by the trial court.[6]

In conclusion, I note that had the trial court been affirmed, an attempt would have been made through the newly appointed trustee to re-establish contact with the children. Such contact would have been for the purpose of determining whether there had been any change in their needs and for distributing the funds held in escrow. I would have concurred in this procedure with the understanding that the trial court would not have distributed any of the accumulated funds unless it were satisfied that the true recipients would be the children and not the mother. To achieve this goal I recognize that it might have been necessary to enlist the services of the American Consul or a private American corporation in Morocco. Nevertheless, such action seemed warranted by the pres-

3. This holding applies equally to support payments. See Fahy, J., concurring in part and dissenting in part, 89 U.S.App. D.C. at 381, 193 F.2d at 684.

4. Prager v. Smith, D.C.App., 195 A.2d 257, 259 (1963).

5. Code 1961, § 11–763.

6. Interestingly, no fault was found with the trial court when it ordered the clerk to hold the funds in escrow. Adams v. Adams, D.C.Mun.App., 184 A.2d 213 (1962).

ent posture of the case. Had the trial court concluded that satisfactory arrangements could not be made, I would have entrusted to its sound discretion a determination of the father's future liability for support payments and a disposition of the accumulated funds.[7]

---

7. Compare Fletcher v. Fletcher, Okl., 362 P.2d 691 (1961).