Lynda O. TRIGO, Appellant,

v.

The RIGGS NATIONAL BANK OF WASHINGTON, D. C., Appellee.

No. 7458.

District of Columbia Court of Appeals.

Argued Nov. 29, 1973.

Decided May 14, 1975.

John G. Gill, Jr., Washington, D. C., for appellant.

William A. Bradford, Jr., Washington, D. C., for appellee.

Before KERN, GALLAGHER and PAIR*, Associate Judges.

GALLAGHER, Associate Judge:

In May of 1971 appellant and her husband, who have four children, entered into a Separation and Property Settlement Agreement under which the husband was to pay appellant $400.00 per month alimony and $200.00 per month for the support and maintenance of the three children who were still minors. A year later the husband began to default on his support obligations, making only partial payments. After July of 1972, no further payments were forthcoming.

In April of 1972 the husband had resigned from his position with the District of Columbia Government and departed for Bolivia, apparently intending to take up permanent residence there. As a result of his employment, a retirement fund of approximately $15,000 had accrued, which, unknown to appellant at that time, was released to the husband's checking account at American Security and Trust Company (American Security) on his instructions during the last part of September 1972.

Appellant learned of the transfer of funds while checking with the Civil Service Commission about the possibility of getting the funds released to her as a substitute for her husband's support obligations, after he had refused to sign a withdrawal form for that purpose. She also learned that a woman posing as her husband's cousin had inquired of the Civil Service Commission regarding the retirement fund. This information led appellant to believe that her husband was surreptitiously attempting to remove his only remaining asset from the United States, using this woman as an intermediary.

* Retired as of April 14, 1974.

Appellant was unable to satisfy the mandatory surety requirements of the attachment before judgment provision.[1] She managed, however, to find counsel willing to assist her, and on October 2, 1972 obtained a temporary restraining order barring withdrawal of any of the funds in the account at American Security.[2] Concurrently, appellant filed a complaint for maintenance and support and other equitable relief, against her husband and American Security, asking that an equitable trust be declared on the funds in the account and that the fund be utilized to satisfy her husband's support obligations.

While appellant was trying to obtain a hold on her husband's last assets, it appears that he was proceeding to prevent this. He wrote three checks, dated September 27, 28 and 29th, 1972 to Miss Nelly Laguna on his account at American Security, for sums totaling $7,500.00. Miss Laguna presented the checks to The Riggs National Bank of Washington, D. C. (Riggs), appellee herein, where she had an account, for deposit and cashing[3] on September 28, September 29, and October 2, 1972.

■ The checks were not honored by American Security, when presented by Riggs for payment, because of the temporary restraining order enjoining disbursal of funds from the account. Riggs was able to apply funds in Miss Laguna's account against the unpaid checks, however, leaving a balance owing to it of $4,547.07. Riggs subsequently filed an unopposed motion to intervene in the suit pending between appellant and her husband for support and maintenance, on October 11, 1972, on the basis of its claim against the husband. A civil action against the husband for the money was also filed by Riggs the same day.[4] In addition, Riggs obtained a writ of attachment before judgment[5] for the $4,547.07 against the husband's account at American Security, which was served on American Security on October 12, 1972.

Having learned of the checks drawn on the account and Riggs' intervention in her suit against her husband, appellant moved for a preliminary injunction. Riggs opposed the motion insofar as it prevented the collection of its claim. American Security, as co-defendant below, responded to the motion by asserting that it was merely a stakeholder and requesting permission to deposit into the Registry of the Court the $12,319.45 held in the husband's account and thereafter be dismissed from the case.

A hearing was held on November 2, 1972 on the motion for preliminary injunction.

1. D.C.Code 1973, § 16–501(e). Attachment before judgment; affidavit and bond.
(e) Before a writ of attachment and garnishment is issued, the plaintiff shall first file in the clerk's office a bond, executed by himself or his agent, with security to be approved by the clerk, in twice the amount of his claim, conditioned to make good to the defendant all costs and damages which he may sustain by reason of the wrongful suing out of the attachment; . . .

2. The temporary restraining order was not a determination that the court had jurisdiction over the husband or his assets. Rather it was "[g]ranted, w/o intend[ing] thereby to determine finally that this Court has jurisdiction. Rather, granted to preserve the status quo while Motions Judge or other appropriate judge determines the issue of jurisdiction. cf: Youngstown Sheet and United Mineworkers cases."

3. When the checks were presented, Riggs gave Nelly Laguna $1,100 in cash, and the balance was credited to her account. Subsequently Nelly Laguna was allowed to draw on those credits given her to the extent of $3,447.07, which she did by issuing her own checks, which were paid.

4. D.C.Code 1973, §§ 28:4–208 and 28:4–209. Although Riggs Bank cashed the husband's checks without any notice of the wife's claim to the funds, the wife's temporary restraining order was prior to Riggs' presentment of the checks to American Security and Trust. Therefore the wife had a prior claim to the funds in that account insofar as the temporary restraining order was a valid attachment of those funds. D.C.Code 1973, § 28:4–303.

5. D.C.Code 1973, § 16–501.

The court agreed that American Security was merely a stakeholder and dismissed it from the case after authorizing it to deposit the money in the account into the registry of the court. The court also granted appellant's request for a preliminary injunction, finding *inter alia* that:

> unless this fund is continued now in the Court's possession and unavailable to the defendant, . . . the plaintiff would be irreparably damaged, in that [it] seems to be the sole remaining [asset] from which future support for the children could be obtained from the defendant, who has obviously fled to Bolivia.
>
> . . .
>
> It would appear that if this fund would in any way be dissipated, that this could possibly prejudice the rights of minor children to future support, as well as the plaintiff herself.

Riggs, proceeding in its civil action against the husband and Miss Laguna, served the husband by certified mail in Bolivia. The husband thereafter appeared through his counsel in the civil suit and agreed to the entry of a consent judgment against him in favor of Riggs for the amount of $4,547.07, without interest and costs. The judgment was approved by the trial court and entered on December 15, 1972.

On December 29, 1972 appellant filed a motion for temporary alimony, maintenance and support for herself and the two children who were still minors, and for counsel fees pendente lite.[6] Riggs filed a response, relating the facts surrounding the consent judgment it had received and opposing the motion insofar as it might reduce the fund in the Registry of the Court below the $4,547.07 to which Riggs claimed it was entitled under the consent judgment. Appellant's husband also responded through counsel, agreeing that he was in arrears in his support and maintenance ob-

ligations. He requested that a hearing be held to determine the amount due appellant, a reasonable amount in counsel fees for appellant's counsel and a resolution of the conflicting claims of appellant and Riggs to the remainder of the fund.

The hearing on appellant's motion for temporary support and maintenance and counsel fees pendente lite was scheduled for February 12, 1973. On that date, however, appellant, Riggs and counsel for the husband entered into a consent order approved by the court, which directed that appellant be paid $4,028.00 as the arrearage then due and owing to her under the Support and Maintenance Agreement. Additionally the order awarded appellant's counsel $1,500 counsel fees and directed that appellant be paid $332.00 per month on the first of each subsequent month:

> so long as there remains a balance in excess of $4,547.07 in the registry of the Court in this case, or until further order of this Court, it being the understanding of the Court and all parties that the right to said $4,547.07 balance will be settled by litigation between Plaintiff, Lyndo [sic] O. Trigo and Intervenor, Riggs National Bank.

On the basis of the consent order and the settlement reached, appellant in a signed release dismissed the suit against her husband and freed him from "any and all future obligations of support, alimony and maintenance for herself over and above the payments outlined in the Court's consent order of February 12, 1973 which relate to the husband's funds previously paid into the Registry of the Superior Court. . . ."

The only remaining issue in the case, the disposition of the $4,547.07, was certified for trial. As the parties stipulated that the facts were undisputed and the controversy was purely a question of law, no evidence was presented. The trial court issued its Conclusions of Law and Order and found

6. D.C.Code 1973, § 16–916.

that Riggs was entitled to the $4,547.07 held in the Registry of the Court. It is from that order [7] that this appeal was taken.

The trial court found, in essence, that the temporary restraining order obtained by appellant on October 2, 1972 was a sufficient seizure of the fund to give the court *in rem* jurisdiction to allow it to determine who was entitled to the money. The court further found that Riggs' claim did not become a lien on the fund until delivery of the attachment before judgment to the United States Marshal [8] on October

---

7.

### CONCLUSIONS OF LAW AND ORDER

This cause was certified for trial on February 28, 1973. It being stipulated by the parties that no genuine issue of material fact existed and that the controversy was purely a question of law, the case was taken under advisement. After consideration of the pleadings and exhibits in both this case and the separate civil action, # 7584–72, oral arguments of the parties, supplemental memoranda, the court concludes as follows:

1. Subject matter is sufficiently before the court via the injunction to determine right to fund. Pennington v. Fourth National Bank, 243 U.S. 269 [37 S.Ct. 282, 61 L.Ed. 713].

2. Use of restraining order under these circumstances in lieu of attachment was proper. Propper v. Clark, 337 U.S. 472, at 488 [69 S.Ct. 1333, 93 L.Ed. 1480].

3. D.C. courts have recognized this format of the use of the restraining order. Wagner v. Wagner [110 U.S.App.D.C. 345], 293 F.2d 533, at 538 (1961).

4. An injunction properly granted is sufficient attachment of a fund to give a claimant opportunity to prove entitlement to the fund on the basis of an antecedent debt where no previous relation to the fund is shown. Fletcher v. Kellogg, 55 D.C. 97, at 98 [2 F.2d 315] (1924).

5. A HIDC * has no more than a security interest in the item of proceeds therefrom. D.C.Code, 28:4–208, 28:4–209.

6. Riggs had no claim to the fund rising to the level of a lien until October 11 upon delivery of the attachment before judgment to the United States Marshal. D.C.Code, 16–507.

7. Riggs' claim is inferior to that of Lynda O. Trigo in that the latter's attachment was first served and the attachment first served is enitled to first payment, Johnson v. Griffith, 2 Cranch C.C. 199, 2 D.C. 199, Fed.Cas. No. 7386; also Grigsby v. Love, 2 Cranch [C.C.] 413, 2 D.C. 413, Fed.Cas.No. 5827.

8. Plaintiff-wife's claim can be for no anticipated future maintenance installments which are not yet due and owing nor for which there exists no pending default. Adams v. Adams [D.C.App.], 196 A.2d 915, at 917.

9. The right to maintenance and support vests as each installment becomes due and becomes a judgment debt similar to any other judgment for money. Fuller v. Fuller [D.C. App.], 190 A.2d 252, at 254; Kephart v. Kephart, 89 U.S.App.D.C. 373, 380–381, 193 F.2d 677, 684, Cert. denied, 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952) ; also Johnson v. Johnson [D.C.App.], 195 A.2d 406, at 407. Cummings General Tire Co. v. Volpe Constr. [D.C.App.], 230 A.2d 712. Trans-Lux Radio City Corp. v. Service Parking Corp. [D.C. Mun.App.], 54 A.2d 144, at 148.

10. This court has been cited no authority and itself has been able to find none, upon which it can rely to declare an equitable trust of the funds paid into court for the benefit of any children for whose support reliance is placed upon the Consent Order entered in this case February 12, 1973, or its predecessor in right the Separation and Property Settlement Agreement and First Addendum thereto, both executed May 21, 1971, based upon a claim for maintenance and support installments not yet accrued or not yet due and owing. Therefore, be it.

ORDERED, ADJUDGED AND DECREED this 3rd day of April, 1973,

1. That plaintiff Lynda O. Trigo recover of defendant Julio Trigo-Ramirez from the fund paid into the registry of the court the sum of $4,028.00, plus $664.00 support and maintenance, for the months of March and April, 1973, pursuant to the Consent Order approved by this court February 12 and filed February 16, 1973;

2. That plaintiff-intervenor The Riggs National Bank recover from defendant Julio Trigo-Ramirez from the fund paid into the registry of this court the amount of $4,547.07, plus interest and costs from date;

3. That the remainder of the fund will remain in the registry of the court subject to monthly disbursement at the rate of $332.00 per month in accordance with the prior Consent Order of the court dated February 12, 1973.

* Holder in due course.

8. D.C.Code 1973, § 16–507. Property subject to attachment; liens; priorities.

*    *    *    *    *

(b) An attachment shall be a lien on the property attached from the date of its delivery to the marshal. When different persons obtain

11, 1972, so that Riggs' claim, being inferior to appellant's, was not entitled to payment until the attachment first served was paid.

We are in agreement with these conclusions. Where we disagree, however, is in the answer to the following question posed to us in this appeal: Accepting ·the fact that appellant's claim is superior and is entitled to be paid first, to what part of the fund held in the Registry of the Court does appellant's claim apply? The trial court determined that appellant's claim could not be granted for any anticipated future maintenance installments not yet due and owing and therefore concluded that appellant's claim covered only that part of the fund that was needed to satisfy support payments already past due.

The trial court's authority for its conclusion that appellant's claim could encompass no anticipated future maintenance installments is Adams v. Adams, D.C.App., 196 A.2d 915 (1964). In that case, the husband appealed from a trial court order which required him to continue to make child support payments despite the fact that the wife willfully disobeyed the terms of a custody award to which she had agreed and also went to Morocco with the children, in derogation of the husband's visitation rights. This court there decided that the mother's actions took the case outside the general rule that "a father's duty to support his minor children is undiminished by any controversy between the parents or the delictum of the mother"[9] and concluded that since the support payments were not being utilized and were apparently not needed for the maintenance of the children, they would be terminated and the money held by the Court would be returned to the husband.

The trial court there had also appointed a trustee and ordered that all the funds held under the support order be turned over to the trustee. It is apparently this Court's disposition of that action by the trial court upon which the trial judge in the case before us relied for the conclusion that appellant's claim did not extend to anticipated future maintenance installments. We there stated that:

> We are further convinced that the trial court was without authority to appoint a trustee to take over the accumulated support payments made by the father through the clerk's office. These monies represent contributions for specific periods for current support and cannot be kept, when not used for that purpose, for anticipated future needs of the children.[10]

All that can be inferred from this, however, was that since the wife apparently assumed the current support obligations of the children and remained outside our jurisdiction, so that our orders were unenforceable against her, we would not require that the payments submitted by the husband to meet current support obligations be retained in anticipation that some future need for them might arise. We indicated, however, that if the children returned to the jurisdiction, our courts would be open to resume supervision and to enforce support payments, if necessitated. That case involved a situation where the husband's contributions for child support were apparently rejected by the mother. The question we have here is quite dissimilar.

The trial court in this case next concluded that the right to maintenance and support vests as each installment becomes due and becomes a judgment debt similar to any other judgment for money. We certainly have no quarrel with that proposition and this court has held to this

attachments against the same defendant the priorities of the liens of the attachments shall be according to the dates when they were so delivered to the marshal.

9. *Id.* at 916.

10. *Id.* at 917.

effect.[11] But where we think the trial court erred was in finally concluding from this that it had no authority to protect those funds which are "based upon a claim for maintenance and support installments *not yet accrued or not yet due and owing.*" (Emphasis added.)

The District of Columbia Code specifically provides that the remedies of attachment, injunction, and sequestration may be used to enforce alimony and support orders.[12] Although the code does not specifically address itself to future installments of alimony and support, the United States Court of Appeals for the District of Columbia Circuit has interpreted the predecessors of D.C.Code 1973, § 16–911 (D.C. Code 1929, tit. 14, § 70 and D.C.Code 1919, ch. XXII, § 975) to apply to such future payments.

That court dealt with a similar problem in Schlaefer v. Schlaefer, 71 App.D.C. 350, 112 F.2d 177 (1940), when presented with the question of whether a wife could enjoin her husband's insurance company from paying him the proceeds of an insurance policy and then obtain a "sequestration of his property, its conversion into cash and application of the proceeds to pay arrears and future monthly installments of $60 in alimony." In addressing the court's power to secure future installments of ali-mony, the court interpreted D.C.Code 1929, tit. 14, § 70 [13] as follows:

> Nor does it violate the statute's language or purpose that the payments are and will continue to be made in installments. Until the payments are due, they cannot be collected by the creditor or one claiming through him. But that does not prevent the court (sitting in equity as here) from directing that payment, when due, be made not to the creditor but to one whom it adjudges to have a superior right to the fund. 71 App.D.C. at 357, 112 F.2d at 184.

Moreover, in Stewart v. Stewart, 52 App.D.C. 323, 286 F. 987 (1923), the court interpreted the predecessor of D.C.Code 1929, tit. 14, § 70 (D.C.Code 1919, ch. XXII, § 975) and approved the injunction/sequestration method of insuring future payments of alimony, though the court noted that sequestration is appropriate to insure past and future installments only when some installments are already past due.

Assuming that a wife may attach her husband's property to insure future monthly installments, what happens if subsequent to this attachment, a creditor of the husband attaches the same property and obtains a judgment? D.C.Code 1973, § 16–507(b) specifically states that the first to attach has priority. In Pezas v. Pezas, 151 Conn. 611, 201 A.2d 192 (1964), the Con-

---

11. Fuller v. Fuller, D.C.App., 190 A.2d 252 (1963) ; Johnson v. Johnson, D.C.App., 195 A.2d 406 (1963).

12. D.C.Code 1973, § 16–911 reads as follows:
   During the pendency of an action for divorce, or an action by the husband to declare the marriage null and void, where the nullity is denied by the wife, the court may:
   (1) require the husband to pay alimony to the wife for the maintenance of herself and their minor children committed to her care, and suit money, including counsel fees, to enable her to conduct her case, whether she is the plaintiff or the defendant, and enforce any order relating thereto by attachment and imprisonment for disobedience ;
   (2) *enjoin any disposition of the husband's property to avoid the collection of the allowances so required ;*

   (3) *if the husband fails or refuses to pay the alimony or suit money, sequestrate his property and apply the income thereof to such objects ;* and
   (4) determine who shall have the care and custody of infant children pending the proceeding. (Emphasis added.)
   D.C.Code 1973, §§ 16–912 and 16–916(d) *allow the court to enforce* decrees of permanent alimony and *support decrees in the same manner.*

13. D.C.Code 1929, Tit. 14, § 70 empowered the court to "enjoin any disposition of the husband's property to avoid the collection of said allowances [of alimony], and . . . sequestrate his property and apply the income thereof to such objects."

necticut Supreme Court of Errors held that in such circumstances the wife would have priority. Mrs. Pezas attached her husband's interest in a piece of real estate to secure future installments of support. About an hour after the wife attached, a second attachment was placed on it by the husband's creditor. Connecticut *did not have a statute providing for attachment as a means of enforcing alimony or support decrees*. However, the court reasoned that the wife's claim had priority "even as regards future installments of support not yet due." *Id.* at 617, 201 A.2d at 195.

■ As previously stated, the husband here entered into a consent order on February 12, 1973 which acknowledged his arrearages, awarded counsel fees, and directed that he pay appellant $332.00 per month on the first of each subsequent month. The only question left open was whether Mrs. Trigo's temporary restraining order and subsequent injunction were sufficient to give her priority over Riggs' claim, since her claim included future installments

not yet accrued and owing. This question is covered by D.C.Code 1973, § 16–916(d), however, which provides for judicial enforcement of the maintenance of wives and children by sequestration, attachment and injunction as provided in D.C.Code 1973, § 16–911. Hence, given the facts of this case it appears that Mrs. Trigo pursued the very remedies provided her by the Congress. Consequently, the temporary restraining order which served as a valid attachment of the entire bank account reaches both the amounts due and future installments not yet accrued. Since it preceded Riggs' attachment, it has priority. Any other interpretation of this statutory scheme would leave the courts of this jurisdiction virtually powerless to enforce similar orders by preventing a husband from absconding with his assets and leaving his family as wards of the state.[14]

In reversing, we leave it to the good judgment of the trial judge to fashion a remedy consistent with this opinion.[15]

Reversed with instructions.

14. Other jurisdictions have interpreted similar statutory schemes as authorizing the use of injunction, attachment and sequestration to insure the payment of future installments of alimony and support. Oles Envelope Corporation v. Oles, 193 Md. 79, 65 A.2d 899 (1949) (attachment, injunction and sequestration); Busch v. Busch, 91 N.J.Super. 281, 219 A.2d 899 (1966) (injunction and sequestration); DiVirgilio v. DiVirgilio, 182 Pa.Super. 475, 127 A.2d 774 (1956) (attachment). In Harbour v. Harbour, 230 Ark. 627, 324 S.W.2d 115 (1959) the court interpreted a statute to allow for sequestration under these circumstances and noted that other jurisdictions have held that a trial court has this inherent right, even where there is no statutory authority. *See, e. g.*, Pezas v. Pezas, 151 Conn.

611, 201 A.2d 192 (1964) (attachment); cf. Bunde v. Bunde, 270 Wis. 226, 70 N.W.2d 624, 629 (1955) where the court amended the divorce judgment so as to make the alimony payments a lien upon the husband's real estate because the husband had "removed from the state of Wisconsin to Mexico City with intent to reside in such city and has withdrawn all bank deposits and other funds from Wisconsin."

15. Appellee points out that there may be future contingencies, viz., remarriage of Mrs. Trigo or death of minor children, which would relieve the obligation to support. The trial court's remedial relief would doubtless take this possibility into account and protect the funds accordingly.